[No. 7018.   Decided January 17, 1908.]

PETER GENNELLE, *Appellant*, v. ALPHONSE BOULAIS *et al.,*
                    *Respondents.*[1]

SALES—CONDITIONAL SALES—PERFORMANCE—RESCISSION BY VENDOR
—DEFAULT IN PAYMENT—EXCUSES—FAILURE OF VENDOR'S TITLE.   The
vendor of chattels under a conditional sale cannot rescind the con-
tract or recover possession on account of the vendee's default in
making payments, where the default was due to the vendor's in-
ability and refusal to convey a perfect title, and tender of the amount
due was made on condition of receiving an unencumbered title to the
property purchased.

Appeal from a judgment of the superior court for Ferry
county, Carey, J., entered January 6, 1907, upon findings
in favor of the defendants, after a trial on the merits before
the court without a jury, in an action to recover possession
of personal property.   Affirmed.

*W. T. Beck* and *Alfred M. Craven,* for appellant.

*G. V. Alexander* and *C. P. Bennett,* for respondents.

RUDKIN, J.—On the 19th day of April, 1905, a conditional
sale agreement of the personal property now in controversy
was entered into between one Lucile Ries and the defendant
Boulais.   The memorandum of sale recited that the property
should remain the absolute property of the vendor until after
the full and complete payment of the purchase price of
$2,500; that the purchase price should be paid as follows:
$200 in cash, the receipt of which was acknowledged, $300 on
June 15, 1905, $500 on August 15, 1905, $500 on Oct. 15,
1905, $500 on Dec. 15, 1905, and $500 on February 15,
1906; that the deferred payments were evidenced by promis-
sory notes of even date, bearing interest at the rate of six
per cent per annum from date until paid; that the property

[1]Reported in 93 Pac. 421.

should be at the risk of the vendee while in his possession, and that loss thereof or damage thereto should not extinguish or diminish liability on the notes given for the purchase price; that the property should be kept insured in a sufficient sum to save the vendor harmless, if possible; that possession was given on the date of sale; that in case default were made in the payment of the purchase money notes, or either of them, principal or interest, as the same became due, the vendor was empowered to take possession of the property, with or without process of law, and that the contract should be forfeited and determined at the election of the vendor, and all sums theretofore paid by the vendee should be retained by the vendor as rental for the use of the property.

On the 30th day of April, 1904, one William Graham filed a lien against the mill property described in the above memorandum of conditional sale, for the sum of $385.13, and on the 31st day of May, 1904, an action was commenced in the superior court of Ferry county against the vendor, Lucile Ries, and one E. A. Gardner, to foreclose said lien, which action was still pending at the time of the commencement of this action. The purchaser Boulais had no actual notice of the lien claim or of the pendency of the foreclosure action until after the conditional sale contract was entered into. The purchase money notes were all paid except the two notes for $500 each, maturing on the 15th day of December, 1905, and the 15th day of February, 1906, respectively. On the 3d day of May, 1906, demand was made for payment of these two notes but payment was refused, except conditionally. On the same day Ries transferred the property by bill of sale to the plaintiff Gennelle, and the present action was instituted to recover possession of the property.

The only controverted fact in the case is whether an extension of time was given within which to make payment of the last two notes to mature, the respondent contending that the time for the payment of the note maturing December

15, 1905, was extended until February 15, 1906, and that the time for payment of the note maturing February 15, 1906, was extended until May, 1906, the appellant contending that no such extension was granted. For reasons to be presently stated the question of extension is not very material.

In April, 1905, all the purchase money notes were left with the British-American Trust Company of Grand Forks for collection. During the month of February, 1906, the respondent Boulais paid the amount of the note maturing December 15, 1905, to the Trust Company, with instructions to pay the same over to the payee upon receiving a deposit of a transfer of a clear title to the mill property, which would include a release or satisfaction of the Graham lien. On the 11th day of May, 1906, the amount of the last note was paid to the clerk of the superior court of Ferry county under like conditions and stipulations. It clearly appears from all the testimony that the respondents were ready and willing to make full payment of the purchase price long prior to the commencement of this action, provided the vendor would convey a clear title and procure a release or satisfaction of the Graham lien, but not otherwise. If, therefore, the respondents had a right to insist upon a release or satisfaction of this lien before making final payment, they were not in default at the time of the commencement of this action. But if they had no such right they manifestly were in default, whether an extension of time for payment had been granted or not, for the first note was more than two months overdue and no payment had been made or tendered except conditionally. The question to be decided, therefore, resolves itself into this: Can a purchaser under a conditional contract of sale retain possession of the property and defend an action for possession on the ground that the title of his vendor is defective or encumbered? The appellant rests his case on the broad principle that a bailee, a tenant, or a purchaser will not be permitted to deny the title of his bailor, landlord, or vendor in

an action to recover possession of the property bailed, leased or sold. Within certain limits this rule is well established, but we do not think that it is applicable or controlling here.

It fairly appears from the record that the appellant's vendor did not have what is termed a marketable title at the time a demand for the purchase price was made or at the time of the commencement of this action, and this fact does not seem to be controverted, and we cannot lend our sanction to a rule of law which will permit a vendor to maintain an action of this kind while himself in default and when his default is the direct and proximate cause of the default on the part of the purchaser. A purchaser of personal property may maintain an action against his vendor for breach of warranty of title without returning or offering to return the property, or he may recoup his damages in an action for the purchase price. A purchaser of real property in possession may recoup his damages in the same manner in an action for the purchase price, or he may maintain an action for specific performance and obtain a reduction or abatement of the purchase price commensurate with any encumbrance on the property. We do not think that a vendee in possession of personal property should be deprived of these rights by a mere change in the form of action. In other words, we do not think that a vendor can tender an encumbered or doubtful title and demand full payment of the purchase price, thus driving the purchaser to his action to recover the purchase money paid, or to an action for damages for breach of warranty. The appellant concedes that the same rule applies to both real and personal property, and in *Stein v. Waddell*, 37 Wash. 634, 80 Pac. 184, this court held that a vendor in default could not maintain an action for the rescission of a contract for the sale of real property. The rule there announced is fully sustained by the authorities. *Dennis v. Strassburger*, 89 Cal. 583, 26 Pac. 1070. Whatever other remedy the appellant might have, the court below correctly ruled that he could not recover

possession of the property for a default on the part of the purchaser caused directly and primarily by the default of his own vendor.

The judgment of the court below is therefore affirmed.

HADLEY, C. J., FULLERTON, CROW, ROOT, and DUNBAR, JJ., concur.