[No. 5093.   Decided June 28, 1904.]

F. F. WILLIAMS, *Respondent*, v. H. L. PITTOCK *et al.*, *Appellants.*[1]

TAXATION—FORECLOSURE OF LIEN—NOTICE—SUMMONS BY PUBLICATION—NAME OF OWNER—DUE PROCESS OF LAW.   A summons by publication in a tax certificate foreclosure against nonresident owners need not name or be addressed to the real owner of the property, in order to constitute due process of law, and is sufficient under the statute if directed to the person in whose name the property was assessed, and to all persons, unknown, if any, having an interest in the property; since the proceeding is *in rem*, and the owner is bound to take notice of the tax and all steps towards its collection.

SAME—REQUISITES OF SUMMONS.   The general statutes as to summons by publication are applicable to tax foreclosure proceedings under Laws, 1901, p. 383, § 1.

PROCESS—SUMMONS—DATE OF FIRST PUBLICATION.   The requirement of the general statute that a summons for publication shall contain the date of the first publication is sufficiently com-

[1]Reported in 77 Pac. 385.

plied with where immediately below the attorney's signature the "Date of the first publication" is stated.

JUDGMENT—VACATION WITHIN ONE YEAR—GOOD CAUSE TO BE SHOWN. Under Bal. Code, § 4880, a nonresident defendant, served by publication in a tax lien foreclosure, is not entitled to the vacation of the judgment, upon a tender of the tax and interest and application made within one year, but good cause therefor must be shown, and mere neglect to pay the taxes is not sufficient cause.

Appeal from a judgment of the superior court for Chehalis county, Joiner, J., entered February 1, 1904, dismissing the action, upon sustaining a demurrer to a petition to vacate a judgment. Affirmed.

*B. G. Cheney* and *Coovert & Stapleton,* for appellants, to the point that a tender of the tax, being a complete defense, entitled the parties to a vacation of the decree within one year, cited, *Woodham v. Anderson,* 32 Wash. 500, 73 Pac. 536; *Hauswirth Admn'x v. Sullivan,* 6 Mont. 203, 9 Pac. 798.

*John C. Hogan,* for respondent.

HADLEY, J.—Respondent, as the holder of a delinquency tax certificate, brought suit to foreclose the same. Judgment by default was entered. The sale of the premises was ordered, and respondent became the purchaser at treasurer's sale. Within a year from the date of its entry, appellants, by petition, asked for the vacation of the judgment. Respondent demurred to the petition on the ground that it does not state facts sufficient to support the relief asked, and also that the court has not jurisdiction to entertain the petition. The demurrer was sustained. Appellants elected to stand upon their petition, and judgment was entered dismissing the same. This appeal is from the judgment.

It is assigned that the court erred in sustaining the demurrer, for the alleged reason that the allegations of the petition show that the foreclosure proceedings amounted to an attempt to deprive appellants of their property without due process of law. The petition avers that appellants are, and ever since 1871 have been, the owners of the land, and that, in the foreclosure proceedings, they were neither served with process nor made parties. It is alleged, however, that service upon them was attempted to be made by publication, directed to W. L. Pittock and Mrs. W. L. Pittock, his wife, and to R. L. Pittock and Mrs. R. L. Pittock, his wife; but that the court did not acquire jurisdiction of the subject matter of the action, for the reason that neither the actual owners nor the reputed owners were made defendants, and that neither were served with process. It is also alleged that neither of the appellants had actual notice or knowledge of the pendency of the action, the publication of the summons, the entry of the judgment, or the sale of the property, until some months thereafter.

Reference to the application for judgment in the foreclosure proceeding, which is attached to the petition as an exhibit, discloses that the property was assessed for these taxes in the name of R. L. Pittock, who was made a party together with the other persons named above, "and all persons unknown, if any, having or claiming to have an interest in and to the real property hereinafter described." The publication summons was directed to the same persons. Appellants do not contend that they were residents of this state, but allege in their petition that they have, at all times mentioned, been and now are residents of the state of Oregon. It is manifest, therefore, that, as far as appellants were concerned, publication summons became the proper process in the case under our statutes. Such being true,

are they bound by the notice that was given, although they were not named therein? That the summons was specifically directed to the person in whose name the property was assessed, must be taken as true, since the exhibit attached to appellants' petition so states, and it is not denied by other averments. It appears, therefore, that good faith was exercised by naming in the summons the persons whose names appeared upon the tax records as the owners. We think no more was required. Tax proceedings under our statutes are purely *in rem*. *Coolidge v. Pierce County*, 28 Wash. 95, 68 Pac. 391. The same is true of tax foreclosure proceedings. *Washington Timber & Loan Co. v. Smith*, 34 Wash. 625, 76 Pac. 267. Our statutes permit property to be assessed to an unknown owner, when the owner's name is unknown. § 1699, Bal. Code. Also, Sess. Laws 1899, p. 287, § 3. It is also provided that the notice in the foreclosure proceedings shall contain the name of the owner, if known. § 1751, subd. 1, Bal. Code. Also, Sess. Laws 1901, p. 383, § 1, subd. 1. The fair inference to be drawn from these statutes is that, if the property has been assessed to an unknown owner, and the certificate of delinquency has been so issued, the foreclosure may be had in form against an unknown owner. It would appear that the actual name of the real owner is made no more essential in the proceedings to foreclose, than it is in the assessment. The whole procedure, including the assessment, foreclosure, and sale, is for the purpose of establishing and enforcing a lien for public revenue, which, under the policy of the state, is chargeable to the property only, and not personally to the owner. It is the land itself with which the state is concerned, and its dominion over the land for revenue purposes exists without regard to who may be the owner. All owners know that such is the fact, and that the power of taxation

will be exercised each year. In the very nature of our revenue procedure, the statutory provisions with regard to owners must have been intended to be directory, rather than mandatory—of the form, and not of the essence, of the proceedings.

"Proceedings of this nature are not usually proceedings against parties, nor, in the case of lands or interests in lands belonging to persons unknown, can they be. They are proceedings which have regard to the land itself rather than to the owners of the land, and if the owners are named in the proceedings, and personal notice is provided for, it is rather from tenderness to their interests, and in order to make sure that the opportunity for a hearing shall not be lost to them, than from any necessity that the case shall assume that form. As in all other cases of proceedings *in rem*, if the law makes provision for publication of notice in a form and manner reasonably calculated to bring the proceedings to the knowledge of the parties who exercise ordinary diligence in looking after their interests in the lands, it is all that can be required." Cooley, Taxation (2d ed.), p. 527.

If the property is assessed to an unknown owner, or to one not the real owner, the holder of a certificate should not be required to determine in advance who may be the real owner. That may be a difficult matter, and may often be the subject of serious dispute. The supreme court of Minnesota, in *McQuade v. Jaffray*, 47 Minn. 326, 50 N. W. 233, aptly observed as follows:

"In several cases, as in *Association v. McComber*, 41 Minn. 20, 42 N. W. 543, it appeared that the ownership of the land was erroneously stated in the published list; but no suggestion was ever made that this invalidated the judgment. Any such rule would subvert the whole policy of our tax law. The statute nowhere makes it the duty of assessors or county auditors to search the records with a view of ascertaining the names of the real owners. Such a search would impose upon them an impossible labor, and,

even if it were possible to perform it, it would often still remain a doubtful question of law who was the real owner; for, as is said in the McComber case, the ownership of land is often a matter of grave doubt and uncertainty."

The above reasoning is clearly as applicable to the holder of a delinquency certificate as to assessors and county auditors. If the duty to determine in all cases who is the real owner rests upon individual certificate holders, then, in the event of foreclosure by a county, the officers must determine the real ownership of the long lists of property usually included in such cases. Such a requirement would be impracticable, and, as said by the Minnesota court above quoted, "would subvert the whole policy of our tax law." This summons contained a proper description of the land, and the name of the person shown by the tax records to be the owner. Commenting upon what the notice in such proceedings shall contain, the opinion in *McQuade v. Jaffray, supra,* further observes:

"It is elementary that no reference to the name of the owner is necessary in proceedings *in rem.* It is, however, a common practice in such proceedings to give the name of the owner, if known, 'for frankness' sake,' to increase the chances of his attention being called to the notice. The provisions of our statute on the subject are but declaratory of this established practice, and are to be construed as merely directory. The essential thing in such proceedings is the description of the *res* (the land), and this is complete without the name of the owner. We think it has been the uniform understanding, ever since our present statute was adopted, that no error or omission in stating the name of the owner affected the jurisdiction of the court over the land."

The principle decided in the above case seems to be directly in point here against appellants' contention. In *Leigh v. Green,* 193 U. S. 79, 24 Sup. Ct. 390, a recent de-

cision of the supreme court of the United States, the subject
of due process of law under the tax procedure of the state
of Nebraska is fully discussed. The notice in that case, as
in the one at bar, was directed to all persons interested in
the property. The federal question presented was, did the
failure of the Nebraska statute to make provision for serv-
ice of notice of the pendency of the proceedings upon a
lien holder amount to a deprivation of property without
due process of law, within the protection of the fourteenth
amendment? It was held that it was not such deprivation
and that the notice given by publication to all persons in-
terested in the property was sufficient process, inasmuch as
the proceeding was *in rem,* and was in aid of the collection
of public taxes. Following an extended discussion of au-
thorities, the opinion concludes as folows:

"The principles applicable which may be deduced from
the authorities we think lead to this result: Where the
state seeks directly or by authorization to others to sell land
for taxes upon procedings to enforce a lien for the payment
thereof, it may proceed directly against the land within the
jurisdiction of the court, and a notice which permits all
interested, who are 'so minded,' to ascertain that it is to be
subjected to sale to answer for taxes, and to appear and be
heard, whether to be found within the jurisdiction or not,
is due process of law within the fourteenth amendment to
the Constitution. In the case under consideration the
notice was sufficiently clear as to the lands to be sold; the
lien holders investigating the title could readily have seen
in the public records that the taxes were unpaid and a lien
outstanding, which, after two years, might be foreclosed
and the lands sold and, by the laws of the state, an inde-
feasible title given to the purchaser. Such lien holder had
the right for two years to redeem, or, had he appeared in
the foreclosure case, to set up his rights in the land. These
proceedings arise in aid of the right and power of the state
to collect the public revenue, and did not, in our opinion,
abridge the right of the lien holder to the protection guar-

anteed by the Constitution against the taking of property without due process of law."

If, as held in the above case, a lien holder is chargeable with knowledge that taxes are unpaid, by so much more should an owner be so chargeable. The primary duty rests upon him to see that the taxes are paid, if he would prevent his land from being sold therefor. He is chargeable with knowledge of every step in the tax procedure, including the listing by the assessor, the sitting of the board of equalization to hear complaints, the completion of the rolls, their delivery to the treasurer, and the issuance of the certificate of delinquency. He must also know that, after the lapse of the statutory period, the right of redemption will be foreclosed. With such knowledge, and after his neglect to pay the taxes within the long period which the state has graciously given him, he cannot complain when he is given the same notice of foreclosure proceedings which may be given to others interested in the property. Within the authority of our statutes already cited and discussed, together with the liberal curative provisions of § 18, p. 299, Sess. Laws 1899, and subd. 6, § 1767, Bal. Code, the notice issued in this case was sufficient, and the above cited decision of the federal supreme court is authority that a judgment, founded upon such notice, does not amount to a taking of property without due process of law.

The petition further alleges that the summons was insufficient to confer jurisdiction, for the reason that it did not set out therein the date of the first publication, and was therefore too indefinite to inform the defendants therein named, or the appellants, when they were required to appear and defend the action. Respondent argues that a tax foreclosure is a special proceeding, governed by the special revenue statutes only, and that, inasmuch as those statutes do not specifically require that the date of the first

publication of the summons shall be stated, it is therefore unnecessary.  Subd. 2 of § 1, pp. 383, 384, Session Laws 1901, relates to the special tax procedure, and declares that service by publication of summons may be had.  There is no requirement in such summons different from those described by the general statute.  We therefore think the law of 1901 requires a reference to the general statute, for a description of what the summons shall contain.  That statute, as found in § 4878, Bal. Code, requires that the date of the first publication shall be named.  It follows that a tax foreclosure publication summons shall state such date. Such, in effect, was said by this court in *Thompson v. Robbins,* 32 Wash. 149, 72 Pac. 1043, and afterwards approved in *Smith v. White,* 32 Wash. 414, 73 Pac. 480.  If it be true, therefore, that the summons in question did not disclose the date of its first publication, it was insufficient to confer jurisdiction.

Immediately following the attorney's signature to the summons is the following:  "Date of first publication, October 9th, 1902."  Appellants contend that the above words, not being in the body of the summons, are not contained therein, within the meaning of the statute.  They also argue that, since the words follow the signature of counsel, it does not appear that they were authorized by the plaintiff in the case; that they may have been placed there by the printer, or by some one else not representing the plaintiff, and by whose acts the plaintiff was not bound. The words were, however, in a conspicuous place, and where they must have been seen, if the summons was read.  It was the duty of the defendants in the action to presume that the correct date was stated, and to act accordingly.  If it afterwards developed that the date was incorrect, the diligence of the defendants would have saved them from any prejudicial consequences.  The fact that the words followed

the signature of counsel we think is immaterial. They conveyed as much information as if they had preceded the signature, and their location is analogous to that of the postoffice address of counsel, which usually follows the signature upon the summons. In *Wagnitz v. Ritter*, 31 Wash. 343, 71 Pac. 1035, it was held that § 4870, Bal. Code, which contemplates that the postoffice address of the attorney shall be contained in the summons, was sufficiently complied with when such address followed the signature. It is true that § 4872 sets forth a form of summons which places the postoffice address after the signature, but the section descriptive of the summons contemplates that the statement as to the postoffice address shall be a part of the summons itself. The form section is a mere legislative construction of the meaning of the prior one, to the effect that, when the address follows the signature, it is sufficiently a part of the summons, and the case cited is a judicial approval of that construction. We think the essence of that construction is applicable to the subject matter here. The recital, stating the date of the first publication, was attached immediately at the conclusion of the summons. One could not, with ordinary care, have read the entire summons without seeing this recital, and we think it should be held to have been a part of the summons. Nothing short of a substantial departure from the statutory requirements for a summons should be held to be fatal to a proceeding under it, and unless it is clear that a defendant has been prejudiced, the variation in form is not such substantial departure. *Shinn v. Cummins*, 65 Cal. 97, 3 Pac. 133. To the same effect is *Ralph v. Lomer*, 3 Wash. 401, 28 Pac. 760. We are unable to see that the defendants in the action were prejudiced by the form of this summons. We therefore conclude that, in both particulars discussed by appellants, the summons was sufficient to confer jurisdiction.

Appellants further urge that, even if the court acquired jurisdiction, they are in any event entitled to have the judgment vacated under the provisions of § 4880, Bal. Code, inasmuch as their application was made within one year from the rendition of the judgment, accompanied with a tender of the taxes and interest. That section, however, provides that for "sufficient cause shown" one shall be entitled to such relief. In *Whitney v. Knowlton,* 33 Wash. 319, 74 Pac. 469, which involved a tax foreclosure, we held that one is not entitled, as a mere matter of right, to the vacation of the judgment, and that, in the absence of a showing of sufficient cause, the petition will not be granted. There is no such showing here. The petition does not allege that the taxes had been paid, or that by mistake, fraud, or other sufficient cause, appellants have been misled to their prejudice. The petition presents a case of mere neglect to pay the taxes, which is not a showing of sufficient cause. Respondent contends that, under the provisions of subdivision 6, §1767, Bal. Code, the appellants are in any event estopped to raise objections to the judgment. It is urged that said section is a special provision of the revenue law, and that tax foreclosure judgments are thereby excepted from the general provisions of § 4880, *supra,* relating to ordinary judgments. It is not necessary that we shall decide that question now, inasmuch as sufficient cause has not been shown in this case, even under the terms of § 4880. When a case arises where meritorious cause is made to appear, it will then be our duty to ascertain if there is any conflict between the statutory provisions, and to construe them if such conflict is found to exist.

The judgment is affirmed.

FULLERTON, C. J., and DUNBAR, MOUNT, and ANDERS, JJ., concur.