[No. 6267. Decided February 27, 1907.]

M. PYATT, *Appellant*, v. OSCAR HEGQUIST *et al.*, *Respondents.*[1]

TAXATION — FORECLOSURE — PERSONAL SERVICE—JUDGMENT—VACA-TION. A tax foreclosure judgment and sale of property assessed to an unknown owner, is properly vacated for bad faith and failure to make personal service upon the defendant owners of the property, who had been ascertained and made parties to the action, where it appears that the defendants lived on the property, were well known in the neighborhood, were the record owners, and could have been found without difficulty, that the plaintiff's attorney made affidavit of their nonresidence without any search except such as was made in the sheriff's office while he was waiting for the return of "not found," and published the summons in a country newspaper of small circulation some distance from the large city in which the property was located, and that the defendants had paid all delinquent taxes except a tax of 24 cents for one year which had been inadvertently overlooked.

[1]Reported in 88 Pac. 933.

Appeal from a judgment of the superior court for King county, Frater, J,. entered January 6, 1906, upon findings in favor of the defendants, granting a petition to vacate a tax foreclosing judgment and sale, after a trial on the merits. Affirmed.

*J. W. Brown,* for appellant.

*Alfred E. Parker,* for respondents.

CROW, J.—On August 15, 1904, a delinquent tax certificate was issued to J. W. Brown, on lot 2, block 70, in Wood's South Division of Green Lake Addition to the city of Seattle, for delinquent taxes for the year 1900. All taxes for 1901 and 1902 had been paid by Oscar Hegquist, the owner; but those for 1903 were afterwards paid by J. W. Brown, the holder of the certificate. Afterwards the plaintiff, M. Pyatt, as assignee of the certificate, commenced this action to foreclose the same, making Oscar Hegquist and Amelia Hegquist, his wife, under the name of "Jane Doe Hegquist," and all persons unknown, if any, having or claiming an interest or estate in and to the property, parties defendant. No service was made, other than the attempted publication service hereinafter mentioned. A default decree was entered, under which the real estate was afterwards sold to the plaintiff. Although Oscar Hegquist and Amelia Hegquist were the owners of the property, they first learned of the foreclosure proceedings in May, 1905. Immediately thereafter they filed herein their motion and petition to vacate and set aside the foreclosure decree, the tax sale, and the tax deed. The plaintiff resisted their application, but the superior court, after hearing the evidence on issue joined, entered an order granting the same, and the plaintiff has appealed.

The allegations of the respondent's petition were substantially the same as the findings of fact made by the trial judge, from which it appears, that no personal service had been made upon Oscar Hegquist or Amelia Hegquist; that

the only service or attempted service upon them was publication in the Auburn Argus, a weekly newspaper published in the town of Auburn in King county, at a considerable distance from Seattle and from the property; that the respondents had no actual notice of the action at any time prior to the issuance of the tax deed; that at all times since the commencement of the action, and for about three years prior thereto, the respondents Hegquist and wife had been, and still are, actually living upon the property sought to be foreclosed; that they had improved the same with a six-room house and other betterments; that the affidavit for service by publication had been made before the delivery of any summons to the sheriff of King county; that such affidavit was exhibited to the sheriff by plaintiff's attorney at the time he took the summons to the office of the sheriff where he remained while the return of "not found" was being prepared, signed, and delivered; that no search was made by the sheriff for either of the respondents, except such as was then made in his office; that, during all the times above mentioned, Oscar Hegquist was well known in the neighborhood where he lived; that any person making diligent inquiry for the respondents, or any search whatever in that locality, would have easily found them, and could have personally served them at the time of the commencement of this action; that Oscar Hegquist regularly received mail directed to him through the Seattle postoffice without street or number; that his name appeared in the Seattle city directories for 1903 and 1904, as residing at the street number corresponding to his home, although his name was spelled therein as "Oscar O. Hagquist;" that the affidavit for service by publication was untrue in so far as it stated that Hegquist and wife were nonresidents of the state, and that the affiant could not find their whereabouts or residence; that before filing their petition, the respondents had tendered to the holder of the tax title full payment of all taxes, interest, and costs herein;

that they are now ready and willing to pay the same, and that they have a good and meritorious defense.

The appellant has excepted to these findings, but we find they are fully sustained by the evidence, which further shows that the respondents, Oscar Hegquist and Amelia Hegquist, purchased the property in January, 1900; that by mistake or neglect of themselves or their grantors, the taxes for 1900, originally amounting to only twenty-four cents, became delinquent; that the respondents paid all taxes for 1901 and 1902, being ignorant of the delinquency for 1900, that they made such payments prior to the purchase of the certificate of delinquency by J. W. Brown; that the taxes for 1902 amounted to only $1.20, the property being then unimproved; that during the year 1902, the improvements were made; that the taxes for 1903 amounted to $10.08, and were paid by Brown on August 16, 1904, he having on the preceding day purchased the certificate of delinquency, and that this action was commenced about five days thereafter. J. W. Brown, the original certificate holder, appeared as attorney for the appellant and made the affidavit for service by publication. The appellant now claims that he made a diligent effort to find the respondents Hegquist and wife, by going into the neighborhood of the property and there inquiring for them, and also by an examination of the city directory; but that he failed to learn anything of them. The evidence, however, shows that, without any apparent difficulty, he succeeded in finding them and demanding possession of the property shortly after the tax deed was executed and delivered, and we think the evidence clearly sustains the finding of the court that Hegquist and wife could have been readily located had the appellant wished to personally serve them.

The 1903 tax paid by Mr. Brown became delinquent on June 1, 1904, and under chapter 181, Laws of 1903, page 384, a certificate of delinquency therefor could not have been

issued against the property prior to December 1, 1904. The only tax then sufficiently delinquent to warrant the issuance of a certificate was the twenty-four cents levied for the year 1900, which for some reason the respondents had inadvertently neglected to pay. Upon J. W. Brown's demand and his payment of this twenty-four cents with interest and fees, the county treasurer issued to him the delinquency certificate upon which this foreclosure proceeding is based. He paid the 1903 tax on the next day, such payment being a condition precedent to foreclosure under Pierce's Code, § 8699. These steps suggest an intention to quietly secure title to respondents' home, which the evidence shows was then occupied by them and reasonably worth $800, rather than a desire to purchase tax liens as an investment bearing the liberal statutory rate of interest. Under amended § 96, Laws 1901, page 383, foreclosure could be commenced only after the expiration of three years from the original date of delinquency of any tax included in the certificate, which in this case would be the twenty-four cents tax for 1900. Upon this one delinquency the appellant bases her sole right to foreclose. We do not question such right, but these circumstances should be considered in ascertaining what equities, if any, exist in favor of the respondents who are now seeking to vacate the decree upon a claim of fraud and want of proper service.

The appellant cites *Williams v. Pittock*, 35 Wash. 271, 77 Pac. 385; *Morrison v. Shipman*, 37 Wash. 171, 79 Pac. 632; *Plumb v. Dyas*, 38 Wash. 240, 80 Pac. 432; *Anderson v. Turati*, 39 Wash. 155, 81 Pac. 557; *Luff v. Gowan*, 38 Wash. 504, 80 Pac. 766; *Washington Timber & Loan Co. v. Smith*, 34 Wash. 625, 76 Pac. 267; and *Rowland v. Eskeland*, 40 Wash. 253, 82 Pac. 599; and now contends, that the property was assessed to an unknown owner; that the respondents were not necessary parties; that the decree as to the unknown owners who were properly served by pub-

lication was in all respects regular; and that the respondents are now bound thereby, this being a proceeding *in rem* for the collection of delinquent taxes, and not a personal action. None of the above-mentioned authorities apply to the peculiar facts now before us. The principal reliance of appellant is based upon *Williams v. Pittock, supra,* but in that case the appellants were conceded to have been nonresidents of the state. In *Anderson v. Turati, supra,* this court, speaking through the same judge who wrote the opinion in *Williams v. Pittock,* said:

"The statute, Laws 1901, p. 384, requires that the summons shall contain the name of the owner, if known. We said in *Williams v. Pittock,* 35 Wash. 271, 77 Pac. 385, that, when the property has been assessed to an unknown owner, and when a certificate of delinquency has been so issued, the foreclosure may be had in form against an unknown owner. But we did not say that the name of an owner, as actually mentioned in the tax rolls and certificate of delinquency, may be omitted from the summons."

To this statement we might add that this court did not say in *Williams v. Pittock,* nor has it held in any other case, that when the holder of a delinquent tax certificate, seeking to foreclose the same, has actually learned the true name of the owner of property assessed to an unknown owner, and has made such owner a party defendant, he can then be relieved from making personal service upon such known owner if he can be readily found. The record shows that Hegquist and wife were the owners of the property with record title thereto and actually living thereon, and that they could have been readily found. Knowledge of their ownership, or at least of their claim to some interest in and to the property, had been brought home to the appellant; otherwise she would not have made them parties. Having been made parties and being the actual owners, they were, under the circumstances and conditions of this record, entitled to personal service, and also entitled to appear and defend.

The appellant contends that the trial court erred in finding and concluding that the publication in the Auburn Argus did not confer jurisdiction, because the paper was not sufficient in size and circulation. We do not understand that the trial court made any such holding. It did appear that the Auburn Argus was a weekly newspaper having a limited circulation of about four hundred copies, of which only one hundred were sent to the city of Seattle, where the respondents lived, and their property was located. The appellant has cited *Warner v. Miner*, 41 Wash. 98, 82 Pac. 1033, in support of her contention that a publication in this paper was sufficient. Conceding her position to be well taken, we nevertheless think the trial court, in endeavoring to determine whether, as a matter of fact, a *bona fide* effort had been made by the appellant, through her attorney, to obtain service by publication upon the respondents, was entitled to consider the size, circulation, and character of the paper selected by him, and also the city or town from which it was issued. Considering the size and population of the city of Seattle, the distance of the town of Auburn therefrom, and the limited circulation of the Auburn Argus, in connection with other facts not disputed, we think it evident that a studied effort was made by the appellant to prevent the respondents from obtaining any actual knowledge of the publication or the pendency of the proceeding. The fundamental purpose in foreclosing a delinquent tax certificate is not to enable its holder to obtain title and to do so adroitly, taking steps calculated to keep an owner in ignorance of the impending loss of his home. On the contrary, the theory of the law is that such a proceeding is instituted to collect the delinquent tax, together with the liberal rate of interest allowed by statute, although in many instances plaintiffs may, and do, rightfully acquire the property.

The appellant further contends that the tender made by the respondents was insufficient. Without discussing evi-

dence in detail, we will simply state our conclusion that we find no merit in this contention. Nor did the court err in sustaining the respondents' motion to retax costs. We have been unable to find any case heretofore decided by this court upon facts parallel with those here presented, but having carefully examined the entire record, we fail to conclude that the trial court has abused its discretion, or committed any prejudicial error.

The judgment is affirmed.

ROOT, MOUNT, RUDKIN, and DUNBAR, JJ., concur.

HADLEY, C. J. and FULLERTON, J., took no part.