[No. 11410. Department Two. January 8, 1914.]

GEORGE NOLAND et al., Appellants, v. FREDERICK J. ARNOLD et al., Respondents.[1]

TAXATION—FORECLOSURE—SUMMONS — STATUTES — AMENDMENT— WHAT LAW GOVERNS. Where a service of summons in a tax foreclosure was completed by the last publication on February 13, under Laws 1897, p. 182, § 96, prior to the amendment of 1899, Laws 1899, p. 296, § 13, changing the form of the summons, the validity of the service is to be determined by the earlier act, the amendment having no application.

SAME—SUMMONS—FOR PUBLICATION—FORM. A statement at the foot of a published summons below the attorney's names, giving the dates of the first and last publication, is a part of the summons, the same as though it were contained in the body thereof.

SAME—SUMMONS—FORM—STATUTES. Under Laws 1897, p. 182, § 96, providing that the summons in a tax foreclosure shall contain a direction to the owner summoning him to appear within sixty days after service of the summons, and Id., § 97, providing that the summons shall be served in the same manner as in civil actions, the form of the summons in tax foreclosures is governed by § 96, supra, and not by the general statutes, Rem. & Bal. Code, § 233, requiring summons for publication in civil actions to notify the defendant to appear within 60 days after the first publication of the summons.

[1]Reported in 137 Pac. 801.

SAME—SUMMONS—FORM.  A summons for publication in a tax foreclosure proceeding, giving the dates of the first and last publication, and notifying the owner to appear within sixty days after the service of the summons upon him, sufficiently notifies him to appear within sixty days after the last publication.

Appeal from a judgment of the superior court for King county, Albertson, J., entered January 9, 1913, dismissing consolidated actions to quiet title, after a trial on the merits to the court.  Affirmed.

*McClure & McClure*, for appellants.

*Corwin S. Shank* and *Horatio C. Belt*, for respondents.

PARKER, J.—This controversy first came into the superior court for King county in the form of three separate actions, instituted by the plaintiffs, seeking to quiet their title to different tracts of land claimed by the defendants Arnolds, Chamberlins, and Larsens, separately, under certain tax foreclosure proceedings, which they claimed divested the plaintiffs of title to the land.  It appearing that the respective rights of the parties to these actions rested upon controlling facts in substance the same, the actions were, by order of the superior court, consolidated.  Thereafter, new pleadings were filed, presenting the question of the superiority of the claim of title made by the plaintiffs as against the defendants, in substance as in the original actions.  A trial upon the merits in the superior court resulted in judgment denying the relief prayed for, and a dismissal of the action.  From this disposition of the cause the plaintiffs have appealed to this court.

While the contentions of counsel have to do with the question of the validity of the judgments rendered in the tax foreclosure proceedings under which respondents claim title and, also, the question of appellants' laches following those proceedings, we conclude that the record before us calls for affirmance of the judgment upon the ground that the judgments rendered in the tax foreclosure proceedings were valid

and divested appellants of their title to the land. The facts controlling the disposition of this question are not in dispute.

In January, 1901, and for some years prior thereto, appellants were the owners of all the land here involved, consisting of five lots in the city of Seattle. Appellants having failed to pay the taxes thereon, and J. F. Bleakley having purchased and become the owner of tax certificates of delinquency against the lots, in January, 1901, he commenced five separate tax foreclosure proceedings against appellants upon his certificates of delinquency, in the superior court for King county. Appellants being residents of the state of Oregon, and it not being possible to serve them with summons in the tax foreclosure proceedings within this state, service was had upon them in each of those proceedings by publication in a newspaper published in King county, which publications were made once a week for six consecutive weeks, the first publication being on January 12, 1901, and the last being on February 23, 1901, all of the summonses being exactly alike as to form and contents, apart from the lot descriptions therein. Each of the summonses, as so published, in so far as we need here notice their contents, reads as follows:

"  .  .  .   You are hereby directed and summoned to appear within sixty (60) days after the service of this notice and summons upon you exclusive of the day of service, in the above named court, and defend the action, or pay the amount due  .  .  .               J. F. Bleakley, Plaintiff.
Office and Postoffice Address:          By H. H. Eaton,
    Stevens Hotel, Seattle,                  Attorney for Plaintiff.
    King county, Washington.
First publication Jan. 12, 1901; last Feb. 23, 1901."

In so far as the language of the summonses, in the body thereof, directed appearance by the defendants, these appellants, they complied with the provisions of § 96, p. 182, Laws of 1897, being a portion of the revenue law of the state then in force, reading as follows:

"Such notice shall contain—   .   .   .

"3.   A direction to the owner summoning him to appear within sixty days after service of the summons, exclusive of the day of service, and defend the action or pay the amount due."

Section 97 of that law, which was also then in force, provided for the service of summons in tax foreclosure proceedings by reference to the general law relating to service of summons in civil actions, as follows:   "Summons shall be served in the same manner as summons in a civil action is served in the superior court."   Section 96 of the revenue law was, in some respects, amended by section 13, p. 296, Laws of 1899, but remained unchanged so far as the above quoted provisions are concerned.   The general law relating to the manner of service of summons by publication in civil actions, which has been in force since long prior to the commencement of these tax foreclosure proceedings, is found in Rem. & Bal. Code, § 233 (P. C. 81 § 159), and reads as follows, in so far as we are here concerned with its provisions:

"The publication shall be made in a newspaper printed and published in the county where the action is brought   .   .   . once a week for six consecutive weeks: Provided, that publication of summons shall not be had until after the filing of the complaint, and the service of the summons shall be deemed complete at the expiration of the time prescribed for publication as aforesaid.   The summons must be subscribed by the plaintiff or his attorney or attorneys.   The summons shall contain the date of the first publication, and shall require the defendant or defendants upon whom service by publication is desired, to appear and answer the complaint within sixty days from the date of the first publication of such summons   .   .   ."

This action, it will be noticed, relates not only to the manner of service in civil actions, but also to the contents of the summons in such actions.   Whether § 97 of the revenue law above quoted makes, by reference, the provisions of Rem. & Bal. Code, § 233 (P. C. 81 § 159), relating to the contents of the summons, controlling in tax foreclosure proceedings,

in view of its specifically prescribed contents in § 96 of
the revenue law, is a question we will notice later.  The sum-
monses in these tax foreclosure proceedings, we have noticed,
were published the last time on February 23, 1901, so that,
on that day, their service was complete and effectual, if they
were sufficient in form and statement of their contents.   On
that day and prior thereto, there was no other law in force
in the state of Washington relating to the contents and the
service of summons by publication in tax foreclosure proceed-
ings than that above quoted which need be here noticed.
Thereafter, on March 20, 1901, there became effectual by
virtue of the governor's approval thereof, and by virtue of an
emergency clause contained therein, an act of the legislature
passed at the session of 1901, amending § 96 of the revenue
law of 1897 so as to make the subdivision thereof above quoted
to read as follows:

"Such notice shall contain   .   .   .

"A direction to the owner summoning him to appear within
sixty days after service of the summons, exclusive of the day
of service, and defend the action or pay the amount due, and
when service is made by publication a direction to the owner,
summoning him to appear within sixty days after the date of
the first publication of the summons, exclusive of the day of
said first publication, and defend the action or pay the amount
due." Laws 1901, p. 384.

Not until the passage of this amendment of 1901, did the
revenue law make any specific provision as to the contents
of a summons which was to be served by publication in a tax
foreclosure proceeding.   Thereafter, on April 30, and May
21, 1901, more than sixty days having elapsed since the last
publication of the summonses in the tax foreclosure proceed-
ings, the defendants therein, these appellants, being in de-
fault for want of appearance and defense therein, the court
rendered judgments foreclosing the delinquent tax certificates
held by J. F. Bleakley, the plaintiff therein.   At the sale of
the lots held in pursuance of those foreclosures, Bleakley be-
came the purchaser of the lots, receiving deeds therefor in

due course from the county treasurer. It was through these foreclosures, and mesne conveyances, that appellants Arnolds, Chamberlins and Larsens became the present owners of separate portions of the land here involved. It is important that we keep in mind, as we proceed, the chronology of the events we have narrated; especially in the application of the decisions relied upon by counsel for appellants.

In view of the passage of the amendment of 1901, which became effective, as we have noticed, some twenty-five days after the date of the last publication of the tax foreclosure summonses, let us first inquire what, if any, influence that amendment will probably have in our consideration of the question of the validity of these summonses and their service. A bare statement of the facts, already noticed, would seem to necessarily leave that amendment entirely out of the proper consideration of the question of the validity of those summonses and the service thereof. We are not, however, without expressions from this court indicating that such is the law. In *Woodham v. Anderson*, 32 Wash. 500, 73 Pac. 536, the tax foreclosure proceedings there drawn in question were sought to be instituted by a published summons the last publication of which was had a few days prior to the amendment of 1901 becoming effective. That summons commanded the defendant "to appear within sixty days after the date of the first publication." It seems to have been prepared with a view to conforming to the general law providing for publication of summons in civil actions, Rem. & Bal. Code, § 233 (P. C. 81 § 159), as to contents in this regard, instead of complying with section 96 of the revenue law of 1897 above quoted, which was then in force, requiring the summons to direct the defendant "to appear within sixty days after the service of the summons." The main question there discussed was: By which law should its validity be tested? The court held that such test must be made by the law in existence at and prior to the date of its last publication, and that, therefore, the summons was void as not complying with the law then

existing, the amendment of 1901 not having yet become effective. Justice Hadley, speaking for the court, at page 502, observed:

"It will be observed from the statement hereinbefore made that the first publication of the summons was made February 8, 1901. Under the law as it then existed, the summons in a tax case required the defendants to appear within sixty days after service of the summons, exclusive of the day of service. Laws of 1897, p. 182, § 96, subd. 3. There was no specific provision in the revenue law for serving a defendant by publication summons. Section 97 of the above act, however, provided that 'summons shall be served in the same manner as summons in a civil action is served in the superior court.' The above provision undoubtedly authorized a service by publication in the same manner as in other civil actions. The general statute upon that subject is found in § 4878, Bal. Code. [§ 233 Rem. & Bal. Code.] The statute provides for publication of the summons in a newspaper once a week for six consecutive weeks, and that the service shall not be deemed complete until the expiration of the time prescribed for publication. Therefore a defendant cannot be said to be *served* with publication summons until the full time of the six weeks' publication has expired; and, inasmuch as the revenue law of 1897, *supra*, provided that a defendant in a tax foreclosure proceeding should not be required to appear until sixty days after the *service* of the summons, it follows, that under that law, when he was served by publication he was not required to appear until sixty days after the period prescribed for publication had ended, for at the expiration of that period only was he actually served. The summons in the case at bar was issued and published when the above rule was in force as to tax cases, but it required an appearance within sixty days from the date of the first publication. There was no authority in law for such a summons in a tax foreclosure case at that time."

Following some further discussion, the opinion concludes, at page 505, upon this question, as follows:

"It follows that the summons in this case, issued and published as it was under the late law, must be governed by that law. If under the former law the summons did not confer jurisdiction to enter the judgment, the later law did not

vitalize it so as to give it jurisdictional force. The judgment was therefore void, and the court did not err in vacating it."

The decision in *Silverstone v. Totten,* 50 Wash. 447, 97 Pac. 491, is in harmony with these views. In that case, however, the last publication of the summons involved occurred after the taking effect of the amendment of 1901, and therefore the sufficiency of its service could not be tested by the prior law. We conclude that, since the last publication of these summonses occurred before the amendment of 1901 became effective, that their sufficiency, both as to contents and service, must be tested by the law existing at and prior to the date of their last publication, and that the amendment of 1901 is, therefore, of no consequence in this inquiry.

Let us next inquire: Were the words and figures, "first publication Jan. 12, 1901; last, Feb. 23, 1901," following the signature of the plaintiff and his attorney upon each of these summonses, a portion thereof, with the same force and effect as if these words and figures had been inserted in the body of the summons? This inquiry is proper to be made here, since we have held that, even though, under the law before the amendment of 1901, there was no specific provision in the revenue law itself for stating in the summons the dates of its publication, the summons must, nevertheless, under the law then existing, contain information that will enable the defendant named therein to determine with accuracy the limit of time within which he must appear and defend. In *Williams v. Pittock,* 35 Wash. 271, 77 Pac. 385, the question was as to the sufficiency of the summons under the amendment of 1901 above quoted, requiring a direction to the defendant in a published summons "to appear within sixty days after the date of the first publication of the summons." The summons in that case stated the date of the publication only by words and figures following the attorney's signature. Disposing of the question of the sufficiency of this as a statement of the date of the first publication, Justice Hadley, speaking for the court, said:

"Immediately following the attorney's signature to the summons is the following: 'Date of first publication, October 9th, 1902.' Appellants contend that the above words, not being in the body of the summons, are not contained therein, within the meaning of the statute. They also argue that, since the words follow the signature of counsel, it does not appear that they were authorized by the plaintiff in the case; that they may have been placed there by the printer, or by someone else not representing the plaintiff, and by whose act the plaintiff was not bound. The words were, however, in a conspicuous place, and where they must have been seen, if the summons was read. It was the duty of the defendants in the action to presume that the correct date was stated, and to act accordingly. If it afterwards developed that the date was incorrect, the diligence of the defendants would have saved them from any prejudicial consequences. The fact that the words followed the signature of counsel we think is immaterial. They conveyed as much information as if they had preceded the signature, and their location is analogous to that of the postoffice address of counsel, which usually follows the signature upon the summons. In *Wagnitz v. Ritter*, 31 Wash. 343, 71 Pac. 1035, it was held that § 4870, Bal. Code, which contemplates that the postoffice address of the attorney shall be contained in the summons, was sufficiently complied with when such address followed the signature."

We conclude that these words following the signature of the plaintiff and his attorney, showing the dates of the first and last publication of the summons, had the same effect as if contained in the body of the summons.

Now, since we have seen that the amendment of 1901, which was not the law at the date of the last publication of the summonses here involved, does not control the question of their validity as to form and contents, nor the question of the validity of their service; and, since we have seen that they contain a statement of the dates of their first and last publications, we are brought to our principal inquiry; to wit: Did these summonses conform to the law as it existed at and prior to the date of such last publication, so as to confer jurisdiction upon the court in the tax foreclosure proceedings, or

should they, as counsel for appellants now contend, have directed the defendants in the tax proceedings "to appear within sixty days after the date of the first publication," as required by the amendment of 1901 thereafter becoming effective, and as required in a summons by publication in an ordinary civil action, under Rem. & Bal. Code, § 233 (P. C. 81 § 159), above quoted?

The observation above quoted from the decision in *Woodham v. Anderson, supra,* it seems to us, answers this question against the contentions here made in behalf of appellants. We have noticed that § 96 of the revenue law of 1897, prior to the amendment of 1901, specifically provided that the summons shall direct the defendant "to appear within sixty days after the service of the summons." This, manifestly, as pointed out in *Woodham v. Anderson, supra,* requires the defendant to appear within sixty days from the date of the completed service, whatever the manner of the service should be. The reference in § 97 of the revenue law of 1897, above quoted, to the general law for the manner of service of summons by publication, we think, did not control the specific provision of § 96, revenue law of 1897, requiring the summons to direct appearance within sixty days after its service; though the general law, Rem. & Bal. Code, § 233 (P. C. 81 § 159), relating to publication of summons in civil actions requires a different direction as to time of appearance. Counsel's contentions are apparently rested upon this provision of the general law; and their argument seems to overlook the fact that a requirement as to *manner of service* of summons, and a requirement as to *contents of the summons* are two different matters, and that the requirements of one do not necessarily control the other. The commingling of these requirements in § 233 of the general law is apt to lead to confusion unless careful discrimination be exercised. Section 97 of the revenue law then in force made specific provision as to what the summons should state as to the time within which the defendant was required to appear. This provision, we think,

was then applicable to all summonses in tax foreclosures, whether served personally or by publication, and was not in any wise controlled by the provisions of § 233 of the general law, though that law was to be looked to to determine the manner of service by publication, which, however, was another matter.   This, apparently, was the view entertained by the court in *Woodham v. Anderson, supra,* as evidenced by the observations above quoted therefrom.   We are of the opinion that, as the law existed at and prior to the date of the last publication of these summonses, when their service was completed, they contained directions for the defendants' appearance, strictly conforming to the law then in existence, and that, by virtue of the statements therein of the dates of their first and last publication, they informed the defendants with absolute certainty as to the time within which they were required to appear and defend.   Sixty days after the service of those summonses clearly meant, as shown upon their face, that the defendants had sixty days after the date of their last publication, which, as we have seen, was the date of their completed service.

It is strenuously argued by counsel for appellants that a number of our decisions are in conflict with the views we have here expressed.   We do not think so.   A critical reading of the decisions of this court touching the sufficiency of summonses in a tax foreclosure proceeding, as to contents and service, will, we think, render it quite plain that no summons like those here involved has ever been the subject of consideration by this court.   At the risk of being somewhat tedious, and of making this opinion unduly lengthy, we will now notice in order all of the decisions of this court which could possibly have any bearing upon the question here involved, from the viewpoint of counsel for appellant.

In *Thompson v. Robbins,* 32 Wash. 149, 72 Pac. 1043, there was drawn in question the sufficiency of a summons attempted to be served by publication, the last publication of which occurred March 30, 1901, some ten days after the

amendment of 1901 became effective. That summons was, in form, as provided by the revenue law of 1897, and directed the defendant "to appear within sixty days after the service of this summons upon you." While the first publication was before the amendment of 1901 became effective, the last occurred thereafter. Of course, as we have seen, its sufficiency could not be controlled by the prior law since its service had not become complete before the expiration of the force of that law, and not complying with the amendment of 1901, it was held void. In that opinion, the court inadvertently discussed the question before it as though the summons had been issued and published after the amendment of 1901 became effective, as was later pointed out in *Smith v. White*, 32 Wash. 414, 73 Pac. 480, which was the next decision rendered by this court upon the subject of the sufficiency of a summons in a tax foreclosure proceeding and the sufficiency of service thereof. In that decision, the summons involved was also issued in form as provided by the former law, and its publication was not completed until after the amendment of 1901 became effective, and the summons was held void for substantially the same reason.

In *Woodham v. Anderson*, 32 Wash. 500, 73 Pac. 536, from which we have already quoted, while the summons involved was issued and first published before the amendment of 1901 became effective, it was, in form, as provided by that amendment, and by the general law, § 233, Rem. & Bal. Code, ignoring the provisions of § 96 of the revenue law, in force at the time of its issuance and last publication, requiring the appearance of the defendant "within sixty days after service of the summons." The summons was held invalid because it did not conform to the law in existence at the time of and prior to its last publication.

In *Williams v. Pittock*, 35 Wash. 271, 77 Pac. 385, already noticed and quoted from, the summons involved was issued and published after the amendment of 1901 became ef-

fective.   This.decision furnishes no aid here further than al-
ready noticed.

In *Dolan v. Jones*, 37 Wash. 176, 79 Pac. 640, the sum-
mons involved failed to become effective because it did not
state the date of its last publication.   It was issued and pub-
lished before the amendment of 1901 became effective, and
hence failed to inform defendant of the date of its completed
service so as to enable him to determine the time within which
he was required to appear.

In *Young v. Droz*, 38 Wash. 648, 80 Pac. 810, there was
involved a summons issued and published after the amend-
ment of 1901 became effective.   It was, in form, so far as its
direction to the defendant to appear is concerned, as pro-
vided by the revenue law before the amendment of 1901 be-
came effective, and for that reason was held void.

In *Owen v. Owen*, 41 Wash. 642, 84 Pac. 606, there was in-
volved a summons apparently issued and published under the
law of 1901, which did not conform to that law in its direc-
tion to the defendant to appear.

In *McLean v. Lester*, 48 Wash. 213, 93 Pac. 208, the sum-
mons involved was issued and published under the law of
1901.   It was held void because of the omission of the year in
stating the month and day of its first publication.

In *Bauer v. Widholm*, 49 Wash. 310, 95 Pac. 277, there
was involved a summons issued and published prior to the
going into effect of the amendment of 1901.   It was held
void because it contained no statement of the date of its last
publication, so, of course, the defendant was not informed
of the period within which he was required to appear and de-
fend.

In *Silverstone v. Totten*, 50 Wash. 447, 97 Pac. 491, which
we have already noticed, there was involved a summons issued
before the amendment of 1901 became effective, but the last
publication of which was thereafter.   It was held ineffective
to confer jurisdiction upon the court in that it did not com-

ply with the amendment of 1901, which was in force at the date of its last publication.

In *Gould v. Knox*, 53 Wash. 248, 101 Pac. 886, the summons involved was held, or rather assumed, to be void. The decision does not inform us upon what ground, evidently because it was a matter which did not call for serious discussion in that case.

In *Gould v. White*, 54 Wash. 394, 103 Pac. 460, there was involved a summons which was held void without discussion, the principal contentions apparently being upon other questions. The court seems to have had in mind the act of 1901, while the form of the summons was as provided by the prior law.

In *Hembree v. McFarland*, 55 Wash. 605, 104 Pac. 837, there was involved a summons which was apparently issued and first published before the amendment of 1901 became effective, the last publication of which was thereafter. Apparently the summons did not conform to the amendment of 1901 though the reasons for holding it invalid are not clear, evidently because that was not a question of serious controversy in the case.

In *Flueck v. Pedigo*, 55 Wash. 646, 104 Pac. 1119, there was involved a summons which seems to have been assumed, rather than directly held, to be void. Here also the question does not appear to have been seriously in controversy.

In *Thompson v. Schoner*, 58 Wash. 642, 109 Pac. 116, there was involved a summons which required the defendant to appear, using the language of the law in existence prior to the amendment of 1901. It was held void for reasons which are not clear from the language of the opinion, unless we assume that it failed to state the dates of its publication. The language of the opinion, however, indicates that it was conceded to be insufficient to confer jurisdiction.

No other decision of this court has come to our notice touching the questions here involved, and we think there is none in conflict with the view we here express, that the sum-

monses in these tax foreclosures, conforming, as they strictly do, in their direction to the defendants to appear, to the revenue law existing at and prior to the time of their last publication and stating the dates of their last publication, were sufficient, upon the completion of their service thus made, to confer upon the court jurisdiction to render the judgments in the tax foreclosure proceedings. We note that some of the syllabi to the decisions we have reviewed refer to the revenue law of 1897 without qualification, when, in some instances at least, they evidently mean the revenue law of 1897 as amended by the act of 1901.

The judgment is affirmed.

CROW, C. J., MORRIS, and MOUNT, JJ., concur.