[No. 19257.   Department Two.   September 2, 1925.]

TITLE AND TRUST COMPANY *et al., Respondents,* v. COLUMBIA BASIN LAND COMPANY *et al.,* *Appellants.*[1]

QUIETING TITLE (25)—PLEADING—ALLEGATIONS AS TO TITLE. In an action to remove the cloud of specific tax deeds, and not to quiet title generally against all the world, it is not necessary for plaintiff to deraign title back to the source, as required by Rem. Comp. Stat., § 785.

PARTIES (4)—PLAINTIFFS—TRUSTEES OF EXPRESS TRUST—VACATION OF TAX DEEDS. A trustee of an express trust, holding the legal and equitable title, may maintain an action to quiet title for the use of persons beneficially interested.

TRUSTS (4)—DEED AS CONVEYANCE IN TRUST—CONSTRUCTION. A trust deed providing that the trustees may sell the land and make deeds thereof, and that the trust shall continue until all the lands are sold, creates a trust, notwithstanding some of its provisions may be treated as a mortgage.

[1]Reported in 238 Pac. 992.

PROCESS (35)—SUMMONS—PROOF OF SERVICE—SUFFICIENCY OF AFFIDAVIT. Proof of the service of a tax foreclosure summons by a person reciting that he was over the age of twenty-one, is fatally defective in not showing that he was twenty-one at the time the service was made.

TAXATION (154, 163)—FORECLOSURE—SUMMONS—NOTICE TO OWNER. A tax foreclosure is fatally defective where no service was made or attempted upon the record owners to whom the property was assessed and whose names and addresses were known or could have been readily discovered, in view of Rem. Comp. Stat., § 11295, providing that the persons appearing on the tax rolls shall be considered as the owners.

SAME (140)—FORECLOSURE—SUMMONS—NOTICE TO OWNER. A tax foreclosure judgment may be collaterally attacked and is void where the record affirmatively shows lack of jurisdiction by the failure to serve notice on the proper parties.

SAME (140). In a tax foreclosure, notice of sale, required to be given to the record owner, can not be shown by the posting of letters mailed by the county treasurer, but proof of actual service must be made.

WATERS (92)—ASSESSMENTS—NOTICE—ENFORCEMENT OF LIEN— WAIVER OF OBJECTIONS. The tender of the amount due on irrigation assessments precludes the defense on foreclosure that they were void.

TAXATION (174)—REDEMPTION—TENDER—SUFFICIENCY. A tender of a tax, insufficient in amount, is good, where it was stated that the party stood ready to pay any additional sum that might be necessary, and he brought the required amount into court.

Appeal from judgments of the superior court for Grant county, Hill, J., entered October 23, 1924, in favor of the plaintiffs, in consolidated actions to set aside tax deeds and conveyances thereunder, tried to the court. Affirmed.

*Sumner & Lebeck,* for appellants.

*Bates & Peterson* and *Daniel T. Cross* (*Bowerman & Kavanaugh,* of counsel), for respondents.

HOLCOMB, J.—Five cases were involved herein, consolidated for trial and for appeal. Similar issues and facts are involved in all of them except that appellants

Escure and wife are not parties to one of the cases, as the land involved therein was not sold to them.

The actions were brought to set aside specific tax deeds and conveyances thereunder which respondents allege constitute clouds upon their title, and were not brought as suits to quiet title generally against all the world, are therefore of purely equitable cognizance, and it was unnecessary to deraign title back to the source, as would be under Rem. Comp. Stat., § 785 [P. C. § 7517].

At all times of the taxation of the property under which the taxes became delinquent and the foreclosures were had, respondents were the owners and holders, as joint tenants, of the legal and equitable title to all the lands involved, as express trustees under a written instrument for the benefit of the two named payees of indebtedness owing from one Kay McKay, named in the instrument as beneficiary.

Respondents, being the owners and holders of the title, consequently were entitled to maintain these actions.

We have a statute so providing, Rem. Comp. Stat., § 180 [P. C. § 8256]; which reads:

"An executor or administrator, or guardian of a minor or person of unsound mind, a trustee of an express trust, . . . may sue without joining the person for whose benefit the suit is prosecuted. A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom or in whose name a contract is made for the benefit of another."

See, also, *Ritchie v. Trumbull*, 89 Wash. 389, 154 Pac. 816.

There is some suggestion on the part of appellants that the trust deed by which respondents hold is more in the nature of an encumbrance or mortgage than a

conveyance. It is true that there are provisions in it by which it may be treated as a mortgage, but it specifically provides that the trustees may sell the lands and make deeds thereto. It also expressly provides that it shall continue in force until a sale of all the lands conveyed, whether or not the payees are satisfied. While it is not a conveyance with warranty, it is a conveyance absolute, but in trust.

Having disposed of the preliminary contentions, we pass to the merits.

For some time prior to December, 1915, the lands had been owned by Kay McKay. In December, 1915, he conveyed the lands, under the trust deed and an accompanying trust agreement, to respondents. That instrument was filed for record in the office of the county auditor of Grant county on January 6, 1916. The title stood so and the lands were taxed to respondents to and inclusive of 1920. Respondents resided in Portland, Oregon. The respondent company has a building named after its own name, in which it does business. Appellant company has for several years done business in Grant county, and is managed generally by W. G. Matthews, its secretary and treasurer. He for some time had also been manager of an abstract company, called the Grant County Abstract Company, at Ephrata, in Grant county.

Beginning in 1915, the Grant County Abstract Company and Mr. Matthews had corresponded with respondent company, he signing as manager, addressing them at their office in Portland, Oregon. He had made abstracts for them and solicited their business. When these taxes for the various years involved became delinquent, his company, Columbia Basin Land Company, received an assignment of the certificates of delinquency and began foreclosures thereof as private foreclosures. There is some difference between the

rules of law applying to private foreclosures and general county foreclosures of certificates of delinquency. Kay McKay only was named in the foreclosure suits, brought by the appellant company, as defendant. As soon as judgments were entered in the tax foreclosure proceedings, sales were made under the judgments by the county treasurer, in each of which the county treasurer stated that he notified respondents as the record owners of the property. The return in each case states:

"That in pursuance of a judgment entered on the 14th of November, 1919, I did on the 29th of November, 1919, after having notified the Title & Trust Company and J. F. Daly, unknown owners, the record owners of the real estate hereinafter mentioned, of the time and place of said pending sale by posting notice, letter and sending copy of notices to Secretary of State, made sale" etc.

The service of the summons on McKay in each case is attempted to be shown as personal by one Max Numan on September 11, 1919, in San Francisco, California. Proof thereof was made by the affidavit of Numan in Clarke county, Washington, on October 6, 1919, before W. G. Matthews, as notary public, who resided at Ephrata, Washington. In the affidavit in each case Numan swears that he "is over the age of twenty-one years" at the time of making the affidavit, but does not make affidavit that he was over the age of twenty-one years at the time of making the service.

There were also Quincy Valley Irrigation District assessments levied for the year 1917 which had become delinquent, and the treasurer of Grant county had advertised the premises for sale for the delinquent assessments. The sales were had, pursuant to public notice, on February 25, 1918, and certificates of sale issued to W. G. Matthews, the secretary and treasurer

of the Columbia Basin Land Company. Duplicate copies of the certificates of sale were filed for record on June 7, 1918, in the office of the county auditor. No redemption having been made, the treasurer, on March 23, 1920, issued deeds therefor to appellant company, the assignee under the certificates.

In February, 1920, one Irwin, at the request of Furnish, one of the payees named in the trust agreement referred to, went to Ephrata, in Grant county, to ascertain the condition of the land with reference to taxes and assessments, and remained there several days. During that time he made efforts to pay the general taxes and the assessments upon the lands in question, but was not permitted to do so. He made tenders to the county treasurer of the sum of $1,460.96, and any further sums which might be necessary to satisfy and discharge all taxes and assessments against the land; which tenders were refused, the treasurer's deputy noting thereon that the check had been tendered but refused, and on the tender for irrigation district assessments that money had been tendered and not accepted. He also made a similar offer to W. G. Matthews, for the Columbia Basin Land Company, and money in that amount was left at a bank in Ephrata to be paid to Columbia Basin Land Company upon its execution and delivery of deeds to the land in question. On March 10, 1920, appellants Escure purchased four of the five sections of the lands involved. Before the commencement of these actions, an attorney for respondents tendered appellant Escure the following amounts:

"$726.27 for Sec. 33, Twp. 19, N. R. 23;
   691.29 for Sec. 33, Twp. 18, N. R. 23;
   517.74 for Sec. 17, Twp. 18, N. R. 23;
   516.68 for Sec.  7, Twp. 18, N. R. 23."

These tenders were refused by the Escures because not sufficient.

It appears from the computation made by respondents themselves at the trial a year later that the following sums were necessary to redeem from the sales for general taxes and assessments:

"For Sec. 33, Twp. 19, N. R. 23, $1,058.82;
For Sec. 33, Twp. 18, N. R. 23,    976.68;
For Sec. 17, Twp. 18, N. R. 23,    730.77;
For Sec.  7, Twp. 18, N. R. 23,    733.77."

The tender in each case, however, contained the following offer:

". . . and if this amount is not sufficient, to so reimburse you, then the said parties (referring to the Title and Trust Company and J. F. Daly, trustee) stand ready, able and willing to pay you any additional sums which may be found to have been so paid out and expended by you or your said predecessor in interest."

The record and the facts herein are voluminous and complicated. Not all of them are referred to in the preceding statement. The trial court resolved all conflicting facts in favor of respondents. A great many questions are discussed which we do not find it necessary to discuss or decide.

The foreclosure proceedings upon the general delinquency certificates were irregular and defective in a number of respects, one or two of which are sufficient to avoid the judgments.

While the proof of service of the attempted personal service on Kay McKay as the owner of the several tracts of land in question was defective because it was not proved that the service was made by a person of the age of twenty-one years, and we have held such proof fatally defective (*French v. Ajax Oil & Development Co.*, 44 Wash. 305, 87 Pac. 359), a more substantial and fatal defect appears in the proceedings.

Matthews, as principal officer of appellant company, must have known at all times that all the land stood in the name of the respondents as record owners. No attempt was made to make any other person a defendant in the foreclosure proceedings than McKay. The county auditor of Grant county also knew that respondents were the record owners and found their address for one of the attorneys for respondents in a few minutes in his office. There can be no question, therefore, that the county treasurer made no good faith effort to discover the address of respondents, if he did not know it. But these tax foreclosure proceedings were brought by a private party. They were brought in behalf of appellant company. The principal and managing officer of that company did know the address of respondents and could have given it to the county treasurer. There is a statute (Rem. Comp. Stat., § 11295) which provides that:

"The names of the person or persons appearing on the treasurer's rolls as the owner or owners of said property for the purpose of this chapter shall be considered and treated as the owner or owners of said property, . . ."

We held in *Carney v. Bigham,* 51 Wash. 452, 99 Pac. 21, that:

"This section makes it clear that the person to whom the property is assessed is the only person other than the true owner against whom a valid foreclosure proceeding may be had in the courts, and that the insertion by the treasurer of the name of a person different from that appearing on the assessment rolls as the owner does not authorize the holder of the certificate to foreclose the lien by making such person a party defendant unless he be the true owner. On the contrary, the holder must at his peril foreclose against the person named on the treasurer's rolls as the owner of the property, or he must foreclose against the true owner."

The above case was followed and reaffirmed in *Radcliff v. Hughes,* 82 Wash. 167, 143 Pac. 980; *Jackson v. Bateman,* 96 Wash. 329, 165 Pac. 63; *Craver v. Wehr,* 98 Wash. 56, 167 Pac. 98.

We also held, in *Sherman v. Schomber,* 43 Wash. 330, 86 Pac. 569, that the foregoing provision of the statute applies to both the county and the individual.

We also held, in *Pyatt v. Hegquist,* 45 Wash. 504, 88 Pac. 933, that the name of an owner as actually mentioned in the tax rolls and certificate of delinquency may not be omitted from the summons. See, also, *Williams v. Pittock,* 35 Wash. 271, 77 Pac. 385, and *Carney v. Bigham, supra.*

Appellants contend that the judgments in the tax foreclosures import absolute verity and that none of the steps taken to establish jurisdiction can be subsequently assailed. That is·not the case. Where the record affirmatively shows a lack of jurisdiction by the failure to comply with some prerequisite required by the statute, the court acquires no jurisdiction and the judgment is void. That is the effect of the decisions above cited and has also been specifically held in several other cases: *Rockwood v. Turner,* 89 Wash. 356, 154 Pac. 465; *Moller v. Graham,* 101 Wash. 283, 172 Pac. 226; *Okanogan Power & Irrigation Co. v. Quackenbush,* 107 Wash. 651, 182 Pac. 618; *Birge v. Cunningham,* 118 Wash. 458, 203 Pac. 954; *Riley v. Varian,* 123 Wash. 436, 212 Pac. 545; *Slocum v. Peterson,* 131 Wash. 61, 229 Pac. 20; *Everett v. Morgan,* 133 Wash. 225, 233 Pac. 317; *Sandberg v. Murphy,* 134 Wash. 685, 236 Pac. 106.

Nor was notice of the sales of the land under delinquency certificates given to the record owner. Appellants contend that notice was given by the county treasurer to the record owners as shown by his return that before sale he notified them by letter. The offi-

cers of respondent company and respondent Daly all deny that they got any such notice; but, be that as it may, the return of the treasurer is insufficient to establish legal notice to the record owner. We have said in several of the above cited cases, and most recently in the *Sandberg* case, *supra,* that notice to the record owner is required for a definite and desirable purpose. All that the treasurer returned that he did was that he notified respondents by posting notices and by letter, and also by sending a copy of the notice to the secretary of state. As no particular notice is prescribed, nor kind of service, he is required to show receipt of actual notice, or proof of service of some sort of personal notice. To sustain a valid sale, it would be necessary for the officer to make proof that he gave actual notice to the record owner. In a case where the record owner lived at the same place of address as the officer giving notice, we held, in *Weyerhaeuser Timber Co. v. Pierce County,* 133 Wash. 355, 233 Pac. 922, that personal notice must be given where no other notice and mode of service is prescribed, as is the case here. There is no proof that such notice was given, and there is positive and uncontroverted proof that no notice was received by the record owners.

Upon the record in this case and the law of this state, we are obliged to hold that the foreclosure proceedings on the certificates of delinquency of general taxes were fatally defective and void.

It remains, then, to determine as to the validity of the foreclosure proceedings of the Quincy Valley Irrigation District assessments and the right to redeem therefrom.

One of the theories of respondents is that the notice of assessment was insufficient to such an extent as to avoid the foreclosure thereof. But we are of the view that respondents, having made a tender of the amounts

of the assessments for the purpose of redemption, cannot now claim that they are void. In other words, respondents have waived any irregularity in the notice of assessments.

But respondents tendered the amount of the assessments, or any amount necessary to redeem from the assessments, eight days before the deeds were issued. Rem. Comp. Stat., § 11297 [P. C. § 6997], provides for redemption before deed is issued. The county treasurer's office acknowledge the tender. The form of the tender was not objected to. Although the tenders made by respondents may have been insufficient in amounts, the offer, as has been heretofore stated, was made, and they stood ready, able and willing to pay any additional sum which might be necessary to satisfy the assessments, interest and costs. They also made the same tenders to appellants. They were refused. Appellant company, which still claimed section 21, refused, through Matthews, to consider any tender. Respondents continued their offer in court, and the trial court found that respondents had paid into court for the defendants in each of the cases there pending the required amount of money. This was more than was necessary under the law. *McManus v. Morgan,* 38 Wash. 528, 80 Pac. 786.

We conclude, therefore, that respondents were entitled to redeem from the foreclosure to the assessments of the irrigation district as adjudged by the trial court.

We find no error in the judgments of the trial court and they are affirmed.

TOLMAN, C. J., MACKINTOSH, FULLERTON, and MITCHELL, JJ., concur.