[No. 1553. Decided February 14, 1895.]

LYDIA S. DIAMOND, *Appellant*, v. FIDELIA B. TURNER *et al.*, *Respondents*.

COMMUNITY PROPERTY — LIABILITY FOR PARTNERSHIP DEBTS — COLLATERAL ATTACK — EXECUTION SALE — DEED TO DECEASED PURCHASER.

Community property is liable for partnership debts incurred by a member of the community in conducting a business in which the profits, if any, would belong to the community.

A sale of community property upon a judgment for a partnership debt cannot be collaterally attacked on the ground that there was sufficient partnership property to satisfy the execution.

A certificate of purchase and confirmation of sale pass the substantial title of defendant upon an execution sale, and the fact that a deed in pursuance thereof was executed to the purchaser after his death will not defeat the title of those claiming under him.

*Appeal from Superior Court, Thurston County.*

*W. I. Agnew*, and *Phil. Skillman*, for appellant.

*John R. Mitchell*, for respondents.

The opinion of the court was delivered by

HOYT, C. J.—In the brief of appellant will be found the following statement of the material facts, in the light of which the rights of the parties must be determined:

"The plaintiff, Lydia S. Diamond, and one of the defendants, J. C. McFadden, were married at Olympia,

on the 9th day of December, 1882, and continued as husband and wife until June 6th, 1888. The land in controversy was acquired on the 12th day of December, 1885, by the defendant J. C. McFadden. On the 6th day of June, 1888, by a decree of divorce, the marriage relations between Lydia S. Diamond and J. C. McFadden were terminated, but no division, separation or disposition was made of their community real estate. On March 26th, 1885, a judgment was recovered by one G. G. Turner against the said J. C. McFadden and one D. P. Ballard, which judgment was for the reformation of a lease of certain real property made and executed by D. P. Ballard and J. C. McFadden as a partnership known as Ballard & McFadden, and the money judgment was for costs in such action. On March 6th, 1886, an execution was issued upon the cost judgment in such action, and levy was made upon the property in controversy, and upon such levy and proceedings had thereunder defendants' title is based. The sheriff's deed was issued to G. G. Turner after his death. The defendant Fidelia B. Turner claims title by virtue of a will conveying G. G. Turner's property to her."

The facts thus stated are supplemented by others shown by the record, and referred to in the brief of the respondents, which are relied upon by them to sustain their title, if it is necessary to invoke their aid. Upon such facts many questions have been elaborately argued, but the conclusion to which we have come as to the rights of the parties upon the facts stated in appellant's brief makes it unnecessary for us to say anything as to these questions. It will be seen by a reference to such statement, and the argument of appellant founded thereon, that the important question to be decided is as to whether or not the judgment under which the sale was made was of such a nature that it could be satisfied out of the community property of the defendant J. C. McFadden and his wife.

We held in the case of *Oregon Improvement Co. v. Sagmeister*, 4 Wash. 710 (30 Pac. 1058), that a liability incurred by a husband in the prosecution of any business the profits of which would belong to the community could be enforced against the community property, and that it would be presumed that any business in which the husband might be engaged was for the benefit of the community until the contrary was shown. It must follow that if the husband alone had entered into the lease which was the foundation of the action in which the judgment in question was rendered, such judgment would have been enforceable against community property. The judgment would have been rendered upon a liability incurred in the prosecution of a business which would be presumed to have been conducted for the benefit of the community.

Does the fact that the business, in furtherance of which the lease was made, was to be prosecuted by the husband in connection with another in a partnership name, so change the rule as to make a liability incurred therein by the husband only enforceable against his separate property? We think not. The community, and not the husband alone, would have been benefited if the business of the partnership had resulted in gain. Hence, its losses should fall upon the community, and not upon the husband alone. It is a well settled rule that the property of the individual members of a partnership can be made available for the payment of its debts when there is not sufficient partnership property available for that purpose. It would seem to follow as a necessary consequence that process which would reach the property of the individual members would be of such a nature as to be enforceable against the community to the same extent as though the judgment upon which it was issued had been against such mem-

ber for a liability incurred by him in the prosecution of a like business on his own account.

The facts stated compel us to hold that the liability upon which the judgment in question was rendered was incurred in the prosecution of a community business, and that such judgment could be satisfied out of the community property.

Such being the fact, but two reasons have been suggested why the sale under the execution did not vest a perfect title in the defendant Fidelia B. Turner, or those under whom she claims, as against the community and each of its members. One is that there was property belonging to the partnership out of which the execution could have been satisfied. That there was sufficient partnership property for that purpose does not clearly appear from the allegations or proofs, but if there was it would furnish no grounds for a collateral attack upon the proceedings which culminated in the sale. Such fact might have furnished sufficient reason for setting aside the sale in a direct proceeding for that purpose. But after it had been confirmed it was invulnerable to collateral attack on account of facts not appearing in the record unless a want of jurisdiction was thereby shown.

The other is that the deed executed in pursuance of the sale was void for the reason that it was executed in the name of a dead man. It is no doubt true that a deed so executed could have no force whatever, but it does not follow that no title was acquired by the purchaser at the execution sale. The certificate of purchase and confirmation of sale were alone essential to pass the substantial title of the defendant in the execution to the purchaser at the sale. The execution of the deed after the time for redemption had expired was a purely ministerial act on the part of the officer,

and could have been compelled by the purchaser, or those claiming under him, at any time in a proper proceeding for that purpose. Until the sale had been set aside, a certificate of purchase would be as fully protected as though the legal title had been conveyed by deed made in pursuance of the statute.

The judgment will be affirmed.

SCOTT and ANDERS, JJ., concur.

DUNBAR, J., concurs in the result.