[No. 19496. Department One. January 21, 1926.]

CHARLES A. ATWOOD, *Appellant,* v. J. B. McGRATH *et al.,*
*Respondents.*[1]

[1] JUDGMENT (153)—COLLATERAL ATTACK—DEFECTS IN SERVICE OF
PROCESS. A default judgment cannot be collaterally attacked
on the ground that the server of the summons did not swear
that he was twenty-one years of age at the time he made the
service, making oath only that he was of that age when the affi-
davit of service was made.

[2] EXECUTION (55, 56)—SALE—COLLATERAL ATTACK — PRESUMPTION
OF VALIDITY. Upon collateral attack upon an execution sale of
real estate, the presumption is in favor of a recital in the deed
that the sheriff did not find sufficient personal property to satisfy
the judgment.

[3] EXECUTION (50)—SALE—OPENING OR VACATING—INADEQUACY OF
PRICE. Inadequacy of price is not ground for setting aside a
sheriff's execution sale and deed, where no steps were taken to
prevent confirmation of the sale.

[4] LANDLORD AND TENANT (21)—ESTOPPEL OF TENANT—ACQUISITION
OF TITLE BY TENANT. A tenant on the land of a judgment debtor
may acquire his landlord's title through an execution sale which
extinguished the landlord's title as it existed at the time the
lease was made.

[5] EXECUTION (58)—HUSBAND AND WIFE (67)—SALE—TITLE AC-
QUIRED — COMMUNITY PROPERTY — SALE BY HUSBAND. Since a
sheriff's certificate of sale does not vest title, the purchaser can
assign the same as community personal property, without his
wife's joining therein.

Appeal from a judgment of the superior court for
Grant county, Truax, J., entered July 30, 1923, upon
findings in favor of defendants, dismissing on the
merits an action to quiet title. Affirmed.

*W. E. Southard* and *William M. Clapp,* for appellant.
*Daniel T. Cross,* for respondents.

[1]Reported in 242 Pac. 648.

HOLCOMB, J.—This is an action in equity, brought for the purpose of setting aside a certain judgment, orders and decrees in certain probate proceedings, an assignment of certificate of sale, and sheriff's deed based thereon, mortgages and deeds from the successive grantees subsequent to the execution sale and deed; and to quiet title unto lands described in the action in appellant, and for damages.

Upon trial to the court upon the issues and facts, the cause was dismissed.

On February 7, 1918, respondent McGrath began an action in the superior court for Grant county against appellant to recover a balance due upon a promissory note, which had been given by appellant and one Blackshere to McGrath in the sum of $103, and for attorney's fees and costs. Appellant was personally served with the summons and complaint in that action, which was numbered 2303 of the records of the superior court of Grant county, on February 7, 1918, which fact, in addition to being shown by the affidavit of the server made and filed in the cause on February 18, 1918, was also admitted in the trial of the cause by a concession in open court that appellant was, on February 7, 1918, personally served with summons and complaint in cause No. 2303, in Grant county, Washington. Appellant made no appearance within the time required by law, and by the summons in the action, and on March 12, 1918, a default was taken against him, and thereupon findings of fact, conclusions of law and a judgment were made and entered awarding judgment for the sum of $103, the balance on the note sued on, for $50 interest, and costs in the action. The order of default, findings and judgment each and all declared and found that appellant had been duly, regularly and personally served with the summons and complaint in

cause No. 2303 on February 7, 1918, in Grant county, Washington.

After the entry of judgment, execution was issued out of the superior court commanding the sheriff of Grant county to

". . . levy upon, seize and take into execution the property of the said C. A. Atwood, either real or personal, not exempt from execution, and to sell the same for the purpose of satisfying said judgment."

Under authority of the execution, the sheriff did, on March 15, 1918, levy upon the real estate in controversy in this action, the same being all in one body. The real estate levied upon was by the sheriff advertised to be sold for the purpose of satisfying the judgment, for five consecutive weeks, the sale to be made on April 20, 1918, at the hour of 10 o'clock a. m., at public auction, at the front door of the court house in Ephrata, Grant county, Washington. On April 20, 1918, at the time and place designated in the notice of sale, the sheriff offered the property for sale to the highest bidder for cash, and the plaintiff in that action bid the sum of $173.25 for the real estate, that being the amount of his judgment. There was no other offer, and the property was sold to the execution plaintiff for that sum. The sheriff issued to him a certificate of sale, duly made return of the sale, and filed his return in the cause on the day of sale. No objections were filed to the sale or the confirmation thereof, and, the time for making and filing objections to the confirmation having expired, the superior court made and entered an order confirming the sale, on May 15, 1918. On May 9, 1918, McGrath, for a valuable consideration, namely, the amount of his judgment and the execution sale, assigned, transferred and set over to J. J. Tobler all his right, title and interest in and to the certificate of sale. At the time the property was sold under

execution, it was incumbered by two mortgages, one in the sum of $500, and one in the sum of $49.25, with accrued interest, which were prior to the lien obtained by the judgment in that cause.

On May 16, 1919, one year having elapsed after the confirmation of the execution sale, the sheriff duly made, executed and delivered to J. J. Tobler a sheriff's deed, in which he conveyed to him the title to the property as the assignee of the execution creditor and purchaser. In the deed the sheriff recited that there had not been sufficient personal property belonging to the judgment debtor to satisfy the judgment. This deed was recorded in the office of the auditor of Grant county on May 20, 1919. On July 20, 1920, Tobler died in Grant county, leaving a widow and one child by a former wife. On October 14, 1920, the widow, Josephine Tobler filed her petition for letters of administration upon the estate of J. J. Tobler, which was filed in probate cause No. 492 of Grant county, and letters of administration were thereafter issued to her.

At the time the sheriff's deed was sold and assigned by McGrath to J. J. Tobler, he (Tobler) was a tenant on the real estate under a lease from appellant. On November 20, 1920, Emil Tobler, the only heir at law of J. J. Tobler besides Josephine Tobler, the widow, and O. L. Tobler, his wife, conveyed all their right, title and interest in and to the land involved to Josephine Tobler, the widow. On September 1, 1921, a final decree of distribution and settlement was entered in the probate proceedings, in which it was decreed that Josephine Tobler was the owner of the land involved, and the same was set over and distributed to her.

On September 19, 1921, Josephine Tobler conveyed by deed all of the property involved to respondent Mitchell, and on the same date Mitchell and his wife

made, executed and delivered to Josephine Tobler their mortgage upon the same property for the sum of $1,000, to secure the payment of a part of the purchase price of the property.

We now mention some facts which are somewhat in conflict, but which, under the determination of the case by the trial court, must have been resolved in favor of respondents, and which we do not consider material from our point. of view.

Some time in March, 1920, Josephine Tobler wrote to appellant that she could not farm the land any longer, and that he could take possession of it, and work it himself. During March, 1919, the Toblers told appellant that they had a certificate of sale of the land, and showed it to him, and wanted him to reimburse them for the money they had paid for it. Appellant told them that it was all right, and that he would settle in the fall. The Toblers got a deed to the land in May, 1919. Atwood came during the fall of 1919 and collected his share of the crop. He remained there a few hours, and said nothing about redeeming the land, and said nothing about the suit brought against him by McGrath. After Atwood had left in the fall of 1919, Mrs. Tobler wrote him to settle up and redeem the land. He paid no attention to this letter. In response to her letter of March, 1920, she received a letter from him stating that he would be down there as soon as he could get some indebtedness collected, and, if he could get the money he had out, he could pay her then. In the spring of 1922, Atwood began to reassert title to the land and the right of possession thereof, against the lessee of Mitchell, and Mitchell and his tenant then instituted proceedings for the purpose of, and which did, evict Atwood from the land. This action was then instituted by appellant.

The facts related herein excuse any lengthy discussion of the law. For the most part, all the contentions are collateral attacks.

Although alleged in his second amended complaint as a cause of setting aside the title and subsequent incumbrances of the Toblers as defective and invalid, the invalidity of the probate proceedings is not here argued, and we shall pay no further attention to that allegation, other than to say that, at best, it is nothing but a collateral attack.

[1] The first point argued by appellant is that the judgment, in cause No. 2303 in Grant county, was and is absolutely void, for the reason that the server of the summons and complaint, one Killion, did not swear he was 21 years old when he served the papers, making oath only that he was, at the time of making the affidavit on February 18, 1918, over the age of 21 years. Appellant contends that the case of *French v. Ajax Oil & Development Co.*, 44 Wash. 305, 87 Pac. 359, governs this question.

That is not correct. The case relied upon, where a direct attack was made upon a judgment of default and leave to file an answer and defense to the merits in the action was prayed, is not like this, which is naught but a collateral attack. Admitting that the service may have been defective as against a direct assault upon it, it was at most voidable, and not void. In the case relied upon, a distinction between a direct and a collateral attack was emphatically made, and it was laid down as a rule that it would be presumed, in aid of a decree which recites that service of the complaint and notice had been duly made according to law, that such recital was true as against a collateral attack upon the judgment after it had been rendered. There is a vast difference between no service at all and the method

of proving service of process. Appellant does not even contend here that there was no service at all, but merely that the method of proving the service of process was defective under the statute. The integrity of judgments of courts of competent jurisdiction having jurisdiction of the subject-matter of the action cannot be attainted on the ground of lack of personal jurisdiction, in a collateral attack in any such way. *Merz v. Mehner*, 57 Wash. 324, 106 Pac. 1118.

The judgment in cause No. 2303 was, therefore, a valid judgment, so far as this attack is concerned.

[2] It is contended that, because the sheriff under the execution levied upon real estate instead of personal property as required by the statute (Rem. Comp. Stat. § 513), the levy was void incipiently, and the certificate and subsequent deed did not alienate title from appellant.

The presumption is that the sheriff followed the statute, and in his deed, on which the title must be based, he recited that he had not found sufficient personal property with which to satisfy the execution. As against a collateral assault, this concludes all parties. Moreover, the judgment-debtor is concluded by the further fact that he made no move against the confirmation of sale under the execution, although he had ample time under the law to do so.

[3] It is next argued that the inadequacy of the execution sale price renders the sale void, for the reason that appellant claims the evidence shows the land sold to have been of the value of $5,000 to $8,000 at the time of the sale. There is evidence to the contrary that the lands were worthless at that time, 1918, which the trial court may have resolved in favor of respondents.

At all events, appellant cannot question the adequacy of the sale price, where he took no steps to pre-

vent confirmation of the sale. *Grunden v. German,* 110 Wash. 237, 188 Pac. 491.

And here, as in the above case, so far as the record shows, the price was the best which could be obtained at a forced sale, taking into consideration that it was subject to incumbrances of something like $600, and appellant cannot now be heard to say that mere inadequacy of price was any indication of fraud, where there were no other circumstances to show fraud.

[4] It is next argued, that the tenant is estopped to deny his landlord's title as it existed at the time he entered into the lease.

The above statement of the principle of the law answers itself. The landlord's title, *as it existed at the time the tenant entered into the lease,* was extinguished by operation of law, and, in such a case, anyone is entitled to acquire the title, even though he be a tenant.

The rule is general and well settled that a tenant in undisturbed possession of demised premises is estopped to deny the title of his landlord, as such landlord's title existed at the time of the creation or inception of the tenancy, before surrender of possession to the landlord. 35 C. J. pp. 1224-1227, and p. 1246, to this effect.

Ordinarily, a tenant may show that he has acquired the title of the landlord, or that he has become a purchaser at a mortgage foreclosure sale, or at a judicial or execution sale, during the existence of the tenancy; and may acquire the title by purchase from one who purchased at such a sale during his tenancy. See, also, 16 R. C. L., pp. 656 and 665.

There is nothing inconsistent with the above statements of the law in our case of *O'Connor v. Jackson,* 33 Wash. 219, 74 Pac. 372, cited by appellant.

[5] Lastly, it is contended that the assignment of the sheriff's certificate was void for the reason that

respondent, McGrath, was married, and his wife did not sign the deed; that it was community property in which she had a substantial interest.

Whatever may have been inferred in *Diamond v. Turner,* 11 Wash. 189, 39 Pac. 379, cited by appellant, this court has long and consistently held that a certificate of sale executed by a sheriff does not vest title, being at most but evidence of an inchoate estate that may or may not ripen into an absolute title. See *Singly v. Warren,* 18 Wash. 434, 51 Pac. 1066, 63 Am. St. 896, and cases therein cited; *Cochran v. Cochran,* 114 Wash. 499, 195 Pac. 224, 198 Pac. 270, and cases there cited; *Ford v. Nokomis State Bank,* 135 Wash. 37, 237 Pac. 314.

Under the foregoing decisions, therefore, and our statutes, the certificate of sale issued to McGrath was nothing more than a chattel real, or chose in action, at most, of which, as the husband of the community, he had the sole management and control, and could sell, assign and dispose of as he saw fit.

The judgment is right and it is affirmed.

Askren and Mitchell, JJ., concur.

Fullerton, J., concurs in the result.

Tolman, C. J. (concurring)—I cannot yield my consent to the last proposition decided, but am clear that appellant cannot raise that question, so concur in the result.