[No. 22370.   Department Two.   January 9, 1931.]

E. W. Parks, *Appellant*, v. August Lepley, *Respondent.*[1]

*Bronson, Jones & Bronson,* for appellant.
*Crollard & O'Connor,* for respondent.

Holcomb, J.—This appeal is from a judgment discharging respondent from liability upon a writ of garnishment.   The principal action was pending by appellant against the Lake View Orchard Company, defendant, in King county, and on March 12, 1929, a writ

[1]Reported in 294 Pac. 1020.

of garnishment was issued out of that court and served upon respondent in Chelan county, to which the garnishment proceedings were thereafter transferred for trial.

Respondent, for answer to the writ, denied any indebtedness. Appellant controverted the answer, alleging that respondent, as lessee, had been occupying certain described real estate under an agreement in writing, which was set forth, to pay as rental the proceeds of twenty per cent. of the crop raised thereon and that such proceeds for 1928 amounted to approximately ten thousand dollars, which were in the hands of the garnishee, for which he was liable to the Lake View Orchard Company at the time of the service of the writ.

Respondent answered this controverting affidavit, alleging in substance that, under his agreement of lease, the Lake View Orchard Company was bound to pay taxes and water charges and that he had the right at any time prior to December 30, 1930, to purchase the premises for forty thousand dollars; that Chelan Orchards, a corporation, had an indebtedness against the Lake View Orchard Company, secured by a mortgage on the property upon which foreclosure proceedings were begun and consummated, and the property sold on about February 2, 1929; that, at the time of sale, there was a large amount of unpaid taxes and irrigation district assessments against the premises; and that respondent purchased the premises at the sheriff's sale upon such foreclosure for the sum of $12,695.01 "in order to protect his equity and rights under his agreement with the Lake View Orchard Company." He admitted receipt of the proceeds from twenty per cent. of the 1928 crop, payable as rental to the Orchard Company, in excess of seven thousand dollars, but claimed the right to have such rental money

applied to the payment of the irrigation district assessments. To this answer, appellant replied with certain denials.

The case was tried by the court without a jury upon the primary issue of the legal right of respondent to apply the rentals admitted, held by him for the principal defendant, to the taxes or assessments upon the property which he purchased at the sheriff's sale.

The evidentiary facts are, for the most part, not seriously in dispute. On March 28, 1927, respondent entered into the agreement of lease, with option to purchase, with the principal defendant, the Lake View Orchard Company. The contract provided for the care of the orchard for 1927 to 1930, inclusive, for a crop rental of twenty per cent., with the option at any time up to the expiration of the contract, on December 31, 1930, to purchase the property for forty thousand dollars on very extended time, and for a percentage of the crop annually. On December 31, 1928, respondent had the sum of $8,482.09, which was the crop rental for 1928. On February 2, 1929, the lands were sold under mortgage foreclosure sale, and $12,695.01 was advanced by respondent to protect his rights in the property, he taking the sheriff's certificate in his name to evidence the moneys advanced. On March 12, 1929, the writ of garnishment was served upon respondent. Respondent had previously, by inquiry at the office of the treasurer of Chelan county, been advised that there were in excess of twenty-three thousand dollars unpaid delinquent taxes and irrigation assessments for several years, including 1925, by reason of which the lands were liable to be sold by the county at any time during the summer of 1929.

Respondent attended the sale under foreclosure, and so did a representative of the mortgagee, one An-

drew Kennedy. Kennedy and respondent had a conference immediately preceding the sale at which Kennedy told respondent the amount he intended to bid for his company as its highest bidding price on both tracts under contract to respondent. An outsider was also present at the sale and bid competitively. Kennedy advised respondent to bid enough to "protect the property." By reason of the competitive bid of the outsider, respondent continued his bidding until he had reached the amount heretofore stated.

At the time respondent entered into the contract of lease and option to purchase, the premises were covered by two mortgages originally made in favor of Lake Chelan Land Company, a corporation, and subsequently assigned to, and then held by, Chelan Orchards, a corporation. One of these mortgages covered one part of the real estate sold, and the other covered the other portion, together with a large amount of other property. The mortgagee, Chelan Orchards, was familiar with the lease and option contract from the Lake View Orchard Company to respondent, and acquiesced therein. It subsequently received from the Lake View Orchard Company a written assignment of the payments to be made thereunder, and agreed that, in the event of the exercise by respondent of his option and the payment to it of the purchase price, it would release the premises from the lien of its mortgages; or, if it should acquire title to the property, it would convey to him such title as he was entitled to receive from the Lake View Orchard Company.

When the Chelan Orchards commenced foreclosure proceedings in 1928, it made respondent a party thereto. The findings of fact, conclusions of law, and decree entered in the foreclosure action specifically recognize the interest of respondent under his agree-

ment of lease and purchase option. The mortgages were established as first liens on the property superior to the rights of any of the defendants

". . . except any rights of the defendant August Lepley under his certain contract theretofore referred to in the findings."

The decree further provided that the sale of the property should be subject to the rights of respondent under his contract, and that the purchaser or purchasers at the sale should be entitled to have and enforce all of the rights of the Lake View Orchard Company under such contract. The special execution which was issued out of the court directing the sale of the property was, also, made subject to the contractual rights of respondent under his agreement, and the notice of sale conformed thereto.

When the property was sold on February 2, 1929, at the request of certain others of the defendants, it was offered in separate parcels. For the property in one parcel, respondent became the purchaser for the sum of $4,495.01; and for the other parcel, he became the purchaser for the sum of $8,200. The sales were duly confirmed, and the judgment of Chelan Orchards against the Lake View Orchard Company was fully satisfied by the proceeds of the sheriff's sale.

Although the case was tried as one in equity under the allegations of the answering affidavit of respondent, the court entered formal findings and conclusions.

The first proposition urged as ground for reversal of the decree by appellant is that, at the time the writ of garnishment was served and at the time of trial, on June 25, 1929, there existed no items of set-off or counterclaim which respondent was entitled to set up against the Lake View Orchard Company, the principal defendant.

This proposition is based upon the assumption that the taxes and assessments then unpaid and long overdue had not been paid by respondent, and constituted no debt which he was entitled to set off as against his lessor. Rem. Comp. Stat., §§ 265 and 266, provides that the counterclaim or set-off which is available to a defendant must be one existing at the time of the commencement of the action against him. In connection with this proposition, it is also argued that, until the possession of respondent was disturbed under his lease by the failure of his landlord to pay the taxes and assessments, he had no right of action against his landlord.

We are unable to agree with the argument of appellant. The lease and option of respondent were threatened by the long delinquent taxes and assessments. A tax sale was imminent and would undoubtedly dispossess respondent unless he did exactly what he prepared to do, pay the overdue taxes and assessments before sale. His contract provided that all taxes and assessments should be paid by his landlord for each crop year. When his landlord permitted them to become delinquent for as far back as 1925, and in the aggregate a very large sum, and others were desirous of obtaining the real estate, respondent undoubtedly had the right to protect himself against the landlord's delinquency. The $8,482.09 he possessed, which represented the rental for 1928, was payable on December 31, 1928. It was then fixed as to his rental. Having a much larger sum than that involved in the taxes and assessments, we think it not only his right but his duty to retain the rental to apply to the taxes and assessments due and delinquent.

Appellant also strenuously insists that respondent cannot be allowed to claim that his purchase at the foreclosure sale of the real estate belonging to .

his landlord was other than an absolute purchase of his landlord's estate and title.

It is not controverted by appellant that he could secure by the garnishment only that which the principal defendant could receive, and that he could not put the garnishee defendant in any worse position than he would have been in had the controversy arose as between himself (respondent) and the main defendant.

"Plaintiff cannot compel the garnishee to perform his contract with the principal debtor otherwise than in the manner provided by the contract." 28 C. J. 246.

"After the rule that plaintiff's rights against the garnishee cannot rise higher than those which, but for the garnishment, defendant would have had, and the correlative rule that the scope of the garnishee's liability is circumscribed by the same limitations, the most comprehensive test of liability to garnishee process is whether the person sought to be charged could have been sued by defendant." 28 C. J. 44.

"If the tenant was at the time of his purchase indebted to the landlord for rent in an amount exceeding the amount of the taxes due, this has been held to preclude him from purchasing for his own benefit. And in some cases the broad view is taken that a tenant cannot become directly or indirectly a purchaser at a tax sale and thereby acquire any title which he may assert against his landlord; that although it is the duty of the landlord to pay the taxes assessed in the absence of any agreement to the contrary between the parties, yet the tenant will not be permitted to take advantage of the omission of his landlord to pay the taxes to terminate the relation between them and obtain title to the land, and that the remedy of the tenant is rather to discharge the assessment himself and deduct the amount from the rent." 16 R. C. L. 669.

Under the above general rules, it being plain under the facts of this case that respondent could not have been sued by the main defendant for the rent due it for 1928 without settling for taxes and assessments,

thus assuring that the contract between respondent and the main defendant would be performed in the manner provided therein, the corollary necessarily follows that respondent cannot be held liable to appellant for the rental for that year. See *Puget Sound Machinery Depot v. Pearson,* 99 Wash. 362, 169 Pac. 847.

Nor can we consider that the purchase by respondent at the foreclosure sale constituted a purchase of his landlord's title and estate so that his leasehold and option contract were merged in the fee.

Whatever untenable or equivocal status had been created by that purchase by respondent was disclaimed by him in his pleading to the writ of garnishment herein. Thenceforth he was bound to account to the landowner as his landlord under his contract. This we consider under the circumstances he had a legal right to do. It was of no concern to appellant, but was of concern to the landlord. Respondent had such an interest in the real estate that he felt called upon to protect the same by every step possible, and had the undoubted right to claim reimbursement for his expenditures. Respondent, by his acts and by his solemn pleading in this proceeding, is obtaining no advantage over his landlord or appellant as a creditor of the landlord. Appellant still has the right, conceded by respondent, to attach the land subject to the rights and obligations of respondent under his contract. By reason of his disclaimer of having acquired the title of the landlord at the mortgage foreclosure sale, the general principle that a tenant may acquire the title of a landlord by purchase at a mortgage foreclosure sale or at a judicial or execution sale during the existence of the tenancy (*Atwood v. McGrath,* 137 Wash. 400, 242 Pac. 648) is of no force here.

As explanation to the litigants and counsel of the delay in deciding this case, it is to be said that the case was originally assigned to the late lamented Judge French, whose untimely death necessitated its reassignment and ensuing delay.

The decree is correct, and it is affirmed.

MITCHELL, C. J., FULLERTON, and MAIN, JJ., concur.