[No. 26925.   Department One.   February 28, 1938.]

DORA A. WALLACE, *as Administratrix and Individually,
Appellant,* v. CLIFFORD THOMAS *et al., Respondents.*

DAIRY COOPERATIVE ASSOCIATION, *Plaintiff,* v. DORA A.
WALLACE, *as Administratrix and Individually,
Appellant,* SECURITY STATE BANK *et al.,
Respondents.*[1]

[1]Reported in 76 P. (2d) 1032.

*E. H. Kohlhase,* for appellant.

*Ronald Moore* and *Lester Huntington,* for respondents.

SIMPSON, J.—This action was originally commenced by D. L. Wallace and Dora A. Wallace against Clifford Thomas and his wife to recover rent claimed to be due from Mr. and Mrs. Thomas. Later, the Dairy Cooperative Association filed its interpleader action making all of the above parties defendants.

We will hereafter refer to the Dairy Cooperative Association as plaintiff and the other parties to this action as defendants.

In its complaint, the association alleged that defendant Clifford Thomas was and had been for some time a member of the plaintiff's association and had marketed milk and cream through such association, and on October 17, 1932, had assigned to defendant Security State Bank all of the proceeds from milk or cream sold by Thomas to plaintiff; that thereafter, on March 1, 1934, defendants Thomas assigned to defendants Wallace, out of the proceeds accruing to them from the milk and cream sales, the sum of twenty-seven hundred dollars, payable at the rate of two hundred twenty-five dollars per month, at which time the Thomases were occupying a certain farm owned by the Wallaces, and that the assignment of the twenty-seven hundred dol-

lars was given to secure the payment of the rental for such property.

It was further alleged that the farm lands leased to defendants Thomas were located in Cowlitz county diking improvement district No. 5 and were subject to certain taxes and assessments for diking and drainage, which liens for taxes and assessments were foreclosed by the county in January, 1936; that thereafter the lands were sold by the treasurer of Cowlitz county to the county, which became the purchaser thereof and acquired title on behalf of the diking improvement district; that thereafter plaintiff association was notified by defendants Wallace that the tax deed was invalid and they demanded that plaintiff resume the monthly payments of two hundred twenty-five dollars.

The plaintiff further alleged that all of the defendants claimed some right, title, or interest to the money it had received from the sale of milk to it from defendants Thomas, and therefore asked that the defendants be required to appear and assert their respective claims to the amount that plaintiff association paid into court.

Thereafter, the various defendants made their claims concerning such fund, defendants Thomas contending, first, that the defendants Wallace had agreed by an instrument in writing that no further rent should be paid because of the fact that a foreclosure proceeding was had on account of the delinquent taxes and assessments; second, that the county treasurer of Cowlitz county had delivered to Cowlitz county a deed to the property in question, which deed was valid upon its face, and that such defendants were required to pay the rent to Cowlitz county on behalf of the diking district.

Defendants Wallace answered and alleged that they were entitled to the amount of money paid into court by virtue of the fact that they owned the property oc-

cupied by defendants Thomas, that they had leased it to the Thomases for a certain agreed amount, that the tax foreclosure deed was invalid, and that the money paid into court by the plaintiff association was money that had been assigned to them on account of the amounts due on the lease by defendants Thomas. They then asked for a judgment against defendants Thomas for the rental due them up to the time of the trial at the rate of two hundred twenty-five dollars per month, and asked further that the money paid into court by the plaintiff association be subjected to the lien of defendants Wallace's judgment.

The Security State Bank in its answer contended that it was entitled to the money paid into court for the reason that defendants Thomas had assigned to such bank all the money resulting from the sales of milk to the plaintiff association by them and had been released from the assignment made to defendants Wallace by Mr. and Mrs. Thomas.

The county answered that it had secured title to the property in question through foreclosure proceedings, was the owner of the property and entitled to receive rent from the Thomases, and that the money paid into court should be turned over to the county.

The case was tried to the court, sitting without a jury, and, after trial, judgment was entered dismissing the action in so far as defendants Wallace were concerned and awarding all of the moneys paid into court by the Dairy Cooperative Association to be the property of the Security State Bank, free and clear of any claim or right of any of the other parties to the litigation.

From such judgment, the defendants Wallace have appealed, urging as assignments of error the action of the court in adjudging the Security State Bank to be the owner of and entitled to the possession of the money

paid into the court and in refusing to adjudge the money due and owing to defendants Wallace.

The facts are summarized as follows: Respondent Clifford Thomas has been for many years prior to the beginning of this action a dairy farmer living in the vicinity of Woodland, Washington, and, being without sufficient funds to conduct his business, made arrangements with respondent Security State Bank for certain loans. To secure these various loans, he assigned to the bank all sums of money to be received from the sale of his milk and cream. This assignment was dated October 22, 1932, and up to the time of the trial had not been revoked.

March 24, 1933, appellants leased to respondents Thomas a dairy farm for the period of one year at a rental of twenty-seven hundred dollars, payable monthly at the rate of two hundred twenty-five dollars. The lease also provided "an assignment of $225 per month to be paid direct from the creamery, or party, or firm, or corporation, purchasing from" Thomas. Later, a formal assignment of the sum of two hundred twenty-five dollars each month was made to appellants by respondents Thomas of moneys coming from milk delivered to the Dairy Cooperative Association. This assignment was agreed to by the bank. The lease was extended on two subsequent occasions, bringing the termination of the last extension to March 24, 1936, rental being in the same amount, but no formal assignment of funds was made.

The farm lands leased by appellants to respondents Thomas were located in diking improvement district No. 5 of Cowlitz county. The diking taxes and assessments on the rented property became delinquent, and on January 15, 1936, judgment was entered foreclosing such lien. February 1, 1936, the farm was sold to Cowlitz county on behalf of the diking district, and a tax

deed was issued to the county by its treasurer February 3, 1936. Immediately upon receipt of the deed, the diking commissioners called it to the attention of respondents Thomas and demanded that the rent be paid to the diking district.

February 3, 1936, respondents Thomas wrote the Dairy Cooperative Association, notifying it of the fact that the diking district had taken over the farm lands, and directed the association not to pay the Wallaces any further money under the order that had been given to the association by them. The association then stopped paying rent to appellants.

Some time prior to February 18, 1936, appellants and respondents Thomas had a consultation relating to the further payment of rent and the fact that a deed had been given to Cowlitz county as result of the foreclosure proceedings. At this conference, appellant Dora A. Wallace, acting for herself and husband, agreed that, if they were paid the sum of one hundred twelve dollars and fifty cents, they would release the Thomases and the association from further rent payments. The agreement was evidenced by a note or letter as follows:

"Woodland, Washington, February 18, 1936. "Dairy Co-op. Sirs: Please pay Mrs. Wallace one more check of $112.50. Clifford Thomas.
"Mr. Henry: Dear Sir: After receiving a check for $112.50 from Mr. Thomas's account I will release you from further payments. Mrs. DORA WALLACE."
[Mr. Henry was a representative of the Dairy Cooperative Association.]

This amount was thereafter paid to appellants.

Respondents Thomas and the diking commissioners then entered into an agreement by the terms of which the Thomases were to have the use of the farm for thirteen months for the agreed sum of two thousand dollars, most of which was paid in making improve-

ments and repairs to the farm buildings, the balance being paid to the commissioners of the diking district.

July 11, 1936, a second tax sale under the foreclosure proceedings was had, and later, October 7, 1936, a new deed was issued by the county treasurer of Cowlitz county to the county on behalf of the diking district.

On the fifth day of October, 1936, the prosecuting attorney of Cowlitz county presented a petition to the superior court asking that the first deed, dated February 3, 1936, be set aside upon the grounds that the sale and the deed were void and of no force and effect, for the reason that notice of such sale had not been given to the recorded owners as required by law. Acting upon this petition, the court made its order, dated October 5, 1936, to the effect that the sale and deed referred to in the petition were void and of no force and effect.

Subsequent to the trial, but before judgment was entered, D. L. Wallace died, and his widow, Dora A. Wallace, was appointed administratrix of his estate. The court then made its order substituting Dora A. Wallace as administratrix of the D. L. Wallace estate in the place of D. L. Wallace.

The principal question presented is whether or not appellants were entitled to collect rent from the respondents Thomas after a deed was executed by the treasurer of Cowlitz county, in compliance with the instructions contained in a decree foreclosing a lien for delinquent taxes and assessments. If appellants were not entitled to collect rent, then they would not be entitled to any of the money paid into court by respondent Dairy Cooperative Association, even though they had an assignment of such sum from the respondents Thomas.

It is understood that no attack was made by any of the parties to this litigation upon the judgment of foreclosure. The objection was to the deed executed by

the county treasurer. The defect claimed was that the treasurer had not notified the owners of the pending sale just prior to the time the sale was actually had, and that such failure on the part of the county treasurer rendered the sale void. A careful reading of the statement of facts does not disclose the truth of this claim, except the statement contained in the petition made to the superior court October 5, 1936, in which the prosecuting attorney petitioned the court to set aside the deed made February 3, 1936.

The statute relative to the sale of property for delinquent assessment liens in diking districts is contained in Rem. Rev. Stat. (Sup.), § 4439-2 [P. C. § 1945-86a], where it provides:

"The respective installments of assessments for construction or maintenance of improvements made under the provisions of this act, shall be collected in the same manner and shall become delinquent at the same time as general taxes, certificates of delinquency shall be issued, and the lien of the assessment shall be enforced by foreclosure and sale of the property assessed, as in the case of general taxes, all according to the laws in force on January 1, 1923, . . ." Laws of 1933, p. 458, § 2.

Turning now to the law regarding the foreclosure of general taxes, referred to in the above section, we find the following provisions relative to the giving of notice after judgment and before sale:

" . . . that before such sale shall be held, the county treasurer shall notify the record owner of such real estate of the pending sale, or in case of unknown owner shall post a notice of same in some public place at the county courthouse. . . ." Rem. Comp. Stat., § 11298 (1922). Pierce's Code, § 7005.

It follows that, if the treasurer did not comply with the above statute relative to the giving of notice, such neglect would render the sale of no force and effect

in so far as the owner of the land was concerned. *Okanogan Power & Irr. Co. v. Quackenbush,* 107 Wash. 651, 182 Pac. 618, 5 A. L. R. 966; *Walter v. Hoeffler,* 117 Wash. 120, 200 Pac. 1101; *Riley v. Varian,* 123 Wash. 436, 212 Pac. 545; *Slocum v. Peterson,* 131 Wash. 61, 229 Pac. 20, 40 A. L. R. 1071; *Title & Trust Co. v. Columbia Basin Land Co.,* 136 Wash. 63, 238 Pac. 992.

Such neglect, however, in not giving notice does not necessarily mean that appellants were entitled to the rent subsequent to the execution of the deed of February 3, 1936.

■ An examination of this deed discloses that it was valid on its face. It properly referred to the decree of foreclosure, gave the names of the record owners, described the property to be sold, designated the date and place of sale, and, among other things, said in relation to the notice of sale, "due and legal notice thereof having first been given according to law."

In considering this deed, valid on its face, we have in mind the statute defining the force and effect of tax deeds, Rem. Rev. Stat., § 11288 [P. C. § 6882-127], which reads as follows:

"Deeds executed by the county treasurer, as aforesaid, shall be prima facie evidence in all controversies and suits in relation to the right of the purchaser, his heirs and assigns, to the real property thereby conveyed of the following facts: First, that the real property conveyed was subject to taxation at the time the same was assessed, and had been listed and assessed in the time and manner required by law; second, that the taxes were not paid at any time before the issuance of deed; third, that the real property conveyed had not been redeemed from the sale at the date of the deed; fourth, that the real property was sold for taxes, interest and costs, as stated in the deed; fifth, that the grantee in the deed was the purchaser, or assignee of the purchaser; sixth, *that the sale was conducted in the manner required by law.* . . . " (Italics ours.)

This statute clearly provides that a tax deed is *prima facie* evidence not only of the validity of the deed and the order under which sale was made, but also of the regularity of all former proceedings. *Ward v. Huggins,* 7 Wash. 617, 32 Pac. 740, 1015, 36 Pac. 285; *Rowland v. Eskeland,* 40 Wash. 253, 82 Pac. 599.

▆ May a tenant dispute his landlord's title and attorn to the holder of a tax deed?

While it is a general rule that a tenant will not be permitted to deny his landlord's title, still if the landlord's title, as it existed at the time the tenant entered into the lease, was extinguished by operation of law, the tenant's obligation is thereby transferred to the real owner of the land. *Twardus v. Crewson,* 182 Wash. 522, 47 P. (2d) 829; *Atwood v. McGrath,* 137 Wash. 400, 242 Pac. 648; 2 McAdam on Landlord and Tenant (4th ed.), 1413, § 413.

Relative to this question, we said in *Twardus v. Crewson, supra:*

"The appellants seek to avoid the effect of the statutes and cases cited, by reason of the fact that the purchaser of the certificate from the city in this case was a tenant of the appellants in possession of the property. While it is the general rule that a tenant in possession will not be permitted to deny his landlord's title, as such title existed at the creation or inception of the tenancy, that rule does not prohibit the tenant from becoming a purchaser at a judicial or execution sale, for the reason that, by purchase at such sale, he is not disputing his landlord's title as of the time when the tenancy was created, but is acquiring a title which subsequently arose. *Atwood v. McGrath,* 137 Wash. 400, 242 Pac. 648; *Parks v. Lepley,* 160 Wash. 287, 294 Pac. 1020."

Of like import, see 16 R. C. L. 665, § 151, and 38 L. R. A. (N. S.) 864.

In the case of *Sheaff v. Husted,* 60 Kan. 770, 57 Pac. 976, it appeared that the landlord had suffered the prop-

erty to be sold for taxes, and his delinquency continued until the tax deed was issued. It was held that the tenant of a landlord could attorn to the holder of a tax deed, regular on its face, even though the deed was voidable for some reason not appearing on its face, because it would be unreasonable to require a tenant to examine into the tax proceedings back of the deed and make his right to attorn dependent upon their regularity.

In *Fitch v. Douglass,* 76 Kan. 60, 90 Pac. 769, 12 L. R. A. (N. S.) 172, it was said:

"The tenant has a right to assume that a tax deed fair upon its face was regularly issued and to act upon that assumption until an attack is made upon it. (*Sheaff v. Husted,* 60 Kan. 770, 57 Pac. 976.) Inasmuch as he may attorn to the holder of such an instrument without inquiring into the tax proceedings back of it, he may assert title under it himself; and notwithstanding that it may afterward be set aside for latent defects he will be protected in expenditures made for lasting and valuable improvements."

To the same effect are 2 Thompson on Real Property (1924), 921, § 1698, and 1 Underhill on Landlord and Tenant (1909), 486-488, § 316.

Respondents Thomas were advised that the county had secured a deed to the property they were renting and then, acting upon that notice, consulted with appellants, with the result that a settlement was made concerning the balance of rent due. They then entered into an agreement with the new owners concerning a lease of the land and paid the sum of two thousand dollars for thirteen months rent. They acted at all times upon the assumption that the tax deed was valid, and this they had every right to do. They were not required to investigate the legality of the tax proceedings to ascertain if all necessary steps had been taken to make it legal.

True, the tax deed was set aside by the court, but that was after respondents Thomas had made their arrangements with, and paid a substantial part of the rent to, the diking commissioners. The second deed, upon which no attack is made, was executed just two days after the date of the court order setting aside the first deed. There really was no time when the appellants were entitled to collect after February 3, 1936.

Appellants are not in a position to complain of the actions of respondents Thomas. Appellants knew the notice of the tax sale, required by statute, was not accorded to them and therefore the tax deed was invalid. They should have acted promptly to have it set aside and not allowed the Thomases to assume the deed to be good and expend large sums of money in the belief that they had a new landlord.

Contention is made by appellants that the real estate was community property, and that Mrs. Wallace could not legally act for herself and her husband. Mrs. Wallace signed and verified the original complaint and answer to the interpleader action in this case. She signed the lease and its extensions for herself and for her husband. In addition, the evidence shows that Mrs. Wallace had for a considerable length of time attended to all of the community business of herself and her husband. This was done mainly on account of the fact that Mr. Wallace was ill and hard of hearing. The community consisting of Mr. and Mrs. Wallace retained all the benefits of any contracts that she entered into. The record clearly proves that she was the actual agent of the community and appellants are estopped to claim otherwise.

"When, therefore, the husband knowingly permits the wife to deal with the community property, his consent to her acts and all of her acts is implied, and he cannot afterwards hold to those which redound to his benefit and repudiate those which are against his in-

terest. He must accept the contract as an entirety, or repudiate it as an entirety, and in this instance he will not be permitted to say that his wife had authority to contract for the land, but did not have authority to settle and relinquish any right acquired thereunder." *Bowers v. Good,* 52 Wash. 384, 100 Pac. 848.

The following cases lay down a similar rule: *Stevens v. Kittredge,* 44 Wash. 347, 87 Pac. 484; *Fielding v. Ketler,* 86 Wash. 194, 149 Pac. 667; *Streck v. Taylor,* 173 Wash. 367, 23 P. (2d) 415; *Short v. Dolling,* 178 Wash. 467, 35 P. (2d) 82.

We conclude, therefore, that respondents Thomas were justified in assuming that the deed of February 3, 1936, was valid and authorized them to acknowledge the new owner and pay rent to it.

Having no right to collect the rent, of course appellants cannot assert any lien or claim any right to the sum of money paid into court by respondent Dairy Cooperative Association.

The judgment is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and GERAGHTY, JJ., concur.