421 P.2d 444

George C. NOBLE, Plaintiff-Appellant,

v.

GLENNS FERRY BANK, LTD., a corpora-
tion, Defendant-Respondent.

No. 9835.

Supreme Court of Idaho.

Dec. 23, 1966.

Smith, Miller & Weston, Caldwell, for appellant.

Langroise, Clark & Sullivan, Boise, for respondent.

SMITH, Justice.

Appellant seeks recovery of damages from respondent bank which, appellant alleges, arose by reason of the bank's conversion, by sale of mortgaged community personalty of appellant and his wife without appellant's consent.

Appellant, prior to the alleged conversion, owned a herd of over 200 purebred Jersey cattle and an 1865-pound milk quota with the Grade A Milk Producers Association. In June 1964, appellant executed in respondent's favor a $40,000 note payable November 15, 1964, secured by a mortgage covering appellant's crops, 252 head of cattle, machinery and equipment. Shortly before the note became due, appellant and Don Withers, manager of respondent's Melba-Kuna branch bank, agreed to make the note payable on demand; thereupon, the bank loaned appellant an additional $5,-000 and accepted an assignment of $1,000 payable monthly from the proceeds of appellant's milk production.

Appellant at this time was experiencing marital difficulties. On November 5, 1964, appellant and his wife separated. Mrs. Noble remained on the farm after the separation, and appellant returned to assist the hired men with the farm chores.

Appellant knew that his debts were insurmountable and that the mortgaged cattle and machinery would have to be sold. During December 1964, and January 1965, appellant traveled out of the state in search of prospective purchasers. Mrs. Noble tended to minor aspects of managing the farm during her husband's absence. On February 3rd, appellant held a farm machinery sale which grossed $28,000, but after deducting amounts owing on purchase contracts, respondent bank received only $5,000.

In late January 1965, appellant met with Mr. Withers and admitted "that we might have to go ahead and sell the cattle." The following month appellant traveled on three occasions to California and Nevada attempting to locate interested purchasers. Withers also sought purchasers in the immediate vicinity, and on February 12, 1965, arranged a sale of 51 head of the cattle to Mssrs. Wagner and Vasser at prices ranging from $70 to $80 per head. Mrs. Noble executed and delivered two bills of sale evidencing those sales, and understood that the purchase price was considerably lower than she and her husband had anticipated. Appellant, who was in Nevada at that time, learned of the sales to Wagner and Vasser on February 26th and telephoned to Withers. Appellant was "pretty upset" about the sale but acquiesced when he learned the number and type of cattle sold.

Appellant had become delinquent in his payments on the purchase price of his farm and, sometime in February 1965, a court order required him to vacate the premises by Tuesday, March 2, 1965. That factor entered into discussions by telephone between appellant and Withers on Friday and Saturday, February 26th and 27th. Withers and appellant agreed that the remaining 152

head of cattle would have to be removed from appellant's farm to a nearby farm owned by Mr. Dean Bues. Withers suggested a sale at a certain price, which appellant felt was excessively low, but added: "I asked [Withers] at this time, I asked him about Mr. [Dean] Bues because I was interested in Mr. Bues getting the cattle if I had to—if they needed to be sold." Appellant then stated he would return to Idaho by 2 p. m. Saturday, February 27th, to assist in transferring the cattle. Appellant failed to return until late Sunday evening.

On Sunday morning, February 28th, Withers caused the remaining cattle to be transferred from appellant's farm to Bues' ranch. Mrs. Noble signed the bill of sale that morning for the 152 head sold to Bues. The price was $250 per head for 30 cows, $200 per head for 60 cows, and a beef price of 8 to 12 cents per pound for the remainder.

ı The next day Withers met with appellant and Mrs. Noble at the bank. According to appellant, he had not realized that his cattle had been sold; he wanted to refinance the note and mortgage in order to extend the time in which to sell the cattle. According to Withers, appellant knew the cattle were sold but wanted to raise enough money to repurchase them from Dean Bues. After agreeing that appellant should consult with his other creditors, Withers had Mrs. Noble execute an assignment of appellant's milk quota at a price of $8.00 per pound, being the value of the quota.

Appellant and Withers visited the Bues' ranch the following Friday, and appellant requested a return of the cattle. Bues stated that he was purchasing the cattle, and appellant accepted Bues' statement *without question*. Withers testified that appellant then remarked that "there was certainly no one that he would rather see get the cattle and that he didn't blame Mrs. Noble and I * * * [H]e admitted it was his fault." Appellant, however, testified that it was not until the next day, Saturday, when he first saw the bills of

sale, that he knew the cattle had been sold to Bues.

The trial court instructed the jury to the effect that the husband has the management and control of community property, but that the husband may designate his wife as his agent and render her acts within the scope of her apparent authority binding upon the community; that if the wife had no prior authority to act as agent for her husband, and if the husband subsequently ratifies or adopts her acts, then the ratification relates back and supplies original authority to do the act; and that prior authorization or subsequent ratification may be inferred from all the facts and circumstances in evidence including the conduct of the parties. The trial court then instructed that if the evidence showed that Noble authorized his wife to sell the cattle and assign the milk quota, or that he subsequently ratified the sale and assignment, then the jury should find for respondent bank.

The jury returned a general verdict in favor of respondent. From the resulting judgment appellant has appealed.

Appellant contends that under the facts herein, the trial court incorrectly instructed the jury to the effect that the wife may act as agent of the community in the sale or disposition of community property. Appellant argues that Idaho law provides only one method by which the wife's agency can be created, i. e., by an express power of attorney. Appellant relies upon I.C. § 32–912, which. reads:

"The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and profits of her separate estate. But he cannot sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered: *provided, that the husband or wife may, by express power of attorney, give to the other the*

*complete power to sell, convey or encumber said community property, either real or personal. All deeds, conveyances, bills of sale, or evidences of debt heretofore made in conformity herewith are hereby validated."* (Emphasis supplied) .

The emphasized portions were added as an amendment by the 1945 legislature, 1945 S.L., Ch. 18.

Appellant asserts that, under the doctrine of *expressio unius est exclusio alterius,* the legislature's enumeration of a particular method of creating the wife's agencyship precludes all other methods of empowering the wife to deal with community property.

Such doctrine is not an unimpeachable rule of law, but merely a logical statement that the court, in cases consistent with recognized rules of interpretation, will adhere to the literal language of a statute in determining the legislative intent. The applicability of the doctrine to any particular statute depends upon whether the legislative intent appears in clear terms in the statute. If not, the intention is to be "collected from the context, from the occasion and necessity of the law, from the mischief felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant with reason and good discretion." Offield v. Davis, 100 Va. 250, 257, 40 S.E. 910, 912 (1902). See also Reilly v. Ozzard, 33 N.J. 529, 166 A.2d 360 (1960); Sutherland, Statutory Construction §§ 4916, 4917 (3d ed. 1943).

Prior to the 1945 amendment of I.C. § 32–912, Idaho law permitted the husband to authorize his wife to act as agent for the management and disposition of community personal property, so that her acts within the scope of her apparent authority, would be binding on the community. The existence of the wife's agency was a question of fact to be determined by the finder of the facts from the husband's and wife's dealings, circumstances, and conduct. Creem v. Northwestern Mut. Fire Assn., 56 Idaho 529, 56 P.2d 762 (1936) (dissenting opinion); Carron v. Guido, 54 Idaho 494,

33 P.2d 345 (1934); I deFuniak, Principles of Community Property § 116 (1943 ed.); 41 C.J.S. Husband and Wife § 512 (b).

The wife's capacity to act as agent for her husband has its origin deeply rooted in common law. See Prestwick v. Marshall, 7 Bingh. 565, 131 Eng.Rep. 218 (C.P. 1831); Co. Litt. 52a. Moreover, "it was a basic principle of Spanish community property law that the husband might consent to the wife acting or contracting, and the same should be true with us." I deFuniak, Principles of Community Property at 329. See Leyes deToro of 1505, Nos. 54–56. The express power of attorney, sanctioned by I.C. § 32–912, is but one method by which the wife may be constituted her husband's agent for purposes of dealing with the community property, both real and personal.

It has been generally stated that the doctrine of *expressio unius* deserves lesser weight (as compared to greater weight), in the interpretation of statutes prescribing one method or course of action in affirmance of existing law, or by way of example, or to remove doubts. This is particularly true where, as the statute I.C. § 32–912, merely codified an already existing method or procedure for managing the community property. People ex rel. Park Reservoir Co. v. Hinderlider, 98 Colo. 505, 57 P.2d 894 (1936); City of Lexington ex rel. Menefee v. Commercial Bank, 130 Mo.App. 687, 108 S.W. 1095 (1908).

We observe that two other community property jurisdictions, Arizona and Washington, have statutes comparable to Idaho's in empowering the husband to execute and deliver an express power of attorney to his wife, thus vesting the wife with legal authority to deal with community property. Ariz.Rev.Stats. § 33–454; Rev.Code Wash. § 26.16.090. Yet neither of those jurisdictions has interpreted its statutes as repealing common law forms of interspousal agency. On the contrary, the Washington and Arizona courts have continued to recognize agencies inferrible from conduct of

the spouses. See Munger v. Boardman, 53 Ariz. 271, 88 P.2d 536 (1939); Wallace v. Thomas, 193 Wash. 582, 76 P.2d 1032 (1938); Short v. Dolling, 178 Wash. 467, 35 P.2d 82 (1934) (alternative holding); Streck v. Taylor, 173 Wash. 367, 23 P.2d 415 (1933).

On the basis of the above reasoning, we hold that the doctrine of *expressio unius* does not apply to the 1945 amendment of I.C. § 32–912, and that the legislature did not intend to proscribe the creation of interspousal agency by means other than execution of an express power of attorney. Accordingly, the trial court correctly instructed the jury on this question of law.

Appellant next contends that the judgment of the trial court is against the law and is not supported by the evidence. Appellant does not indicate in what respect the evidence fails to support the judgment, nor does his brief contain citation of authority supporting the assignment. Moreover, on oral argument, appellant's counsel stated: "Whether or not the evidence is sufficient for this inference [of the wife's agency] is not before us because * * * we feel the instructions are wrong." Under these circumstances, we need not consider such assignment of error on this appeal. Michael v. Zehm, 74 Idaho 442, 263 P.2d 990 (1953); Merrill v. Fremont Abstract Co., 39 Idaho 238, 227 P. 34 (1924).

Under the aforesaid view of the appeal, appellant's assignments of error relating to the admission of evidence bearing upon the value of the cattle were, at most, non-prejudicial. Since the respondent did not convert appellant's property, the issue of damages is not presented on the appeal.

The judgment is affirmed. Costs to respondent.

McFADDEN, C. J., and McQUADE, TAYLOR and SPEAR, JJ., concur.